## James Key's Lessee, vs. Thomas J. Davis.

An estate was devised to one in tail, and if he died without heirs of his body, then to another in tail. The first tenant in tail conveyed the land in fee, by deed of bargain and sale, and then died. The remainder man cannot impeach the deed, upon the ground that, at the time of its execution the bargainor was *non compos mentis.*

This suit was tried July term 1850, and was instituted 14th August 1840. It was an action of ejectment, brought in Charles county court, to recover tracts of land called Bettys Delight, St. Nicholas Hills and Chandlers Hills, situate in the said county. Defence was taken upon warrant and a survey ordered, and a commission to take testimony. Verdict was obtained by the defendant. This appeal by the plaintiff, brought before this court the several opinions of the court below.

The plaintiff deduced title from the patentee for the land, located by him for his claim and pretensions. The title being shown to be in James Key, the will of said Key, dated 26th April 1779, was produced as one of the title papers, and thereby it appeared that the land in controversy was devised to the widow for life, and after her death, to his son Thomas Key, and the heirs of his body, remainder to his son James, and the heirs of his body, &c. He then offered to prove that both the widow and Thomas, the son, were dead.

The plaintiff here rested his case, and thereupon the defendant, to show the title to the land to be out of the plaintiff, who is supposed to be the second devisee in tail, in the will aforesaid, read in evidence a deed, dated 9th November 1799, by Thomas Key, the first devisee in tail, to Robert Fergusson and John Campbell, for the same lands, and proposed to follow it up, by showing title in himself from said grantees.

Thereupon the plaintiff offered to impeach the said deed of Thomas Key, by the testimony of Mrs. Rives. She had heard him converse with persons and answer questions asked by them, but never conversed with him herself; but he was

subject to fits frequently, every change and full of the moon. By Robey, that in his opinion, from his imbecility of mind, he was not capable of transacting the most ordinary business, and never did transact any to the knowledge of either of said witnesses; that in the opinion of both of them, the said Thomas Key was *non compos mentis*, and incapable of making a valid deed or contract—the said Robey stating, that he had never seen the said Key more than three or four times, never conversed with him himself or heard others converse with him. The defendant objected to this testimony, and the court refused to permit the same to be read. The plaintiff excepted.

The plaintiff then offered to read in evidence, "separately and seriatim," the three commissions returned in this cause, with the evidence taken under them. The defendant's counsel objected to each of them, and the court refused to permit them, or either of them, to be read in evidence. To this refusal by the court, the plaintiff excepted.

The objections to these commissions will not be stated, as the grounds upon which the judgment of the court below was affirmed, will appear in the opinion of this court, without introducing into this statement the commissions, or the manner in which they were executed.

This case was argued this term before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

By *F. Stone* and *R. J. Brent* for the appellant, and *Causin* for the appellee.

*Stone* for the appellant, observed, that the testimony relative to the incapacity of Thomas Key, was objected to upon two grounds:—1st. That it was not competent for the plaintiff, under the pleadings and evidence in this cause, thus to impeach the deed of Thomas Key collaterally. 2nd. That the evidence, if admissible, is not legally sufficient to prove incapacity. The second exception was taken, because of the rejection of all the testimony taken under the commission.

There are urged the same objections to this testimony, as to that in the first exception. It is also objected, that there is informality in the execution of the commissions. *Beverly's case*, 4 *Co.*, 123, is a strange one. It admits, that a privy in blood may show the incapacity of ancestor, but privies in estate or tenure cannot. *2nd Law Lib.*, 264, *Shelford on Lunacy*, refers to 3 *Mod. Rep.*, 307, which says, that in argument, Lord Coke's opinion was objected to, as early as 1690, as not being based on authority, but only his *dictum*. *Stock on Non Compos Mentis*, 31, to be found in 25*th Law Lib.*, 26, says, Lord Coke wants authority to sustain him.

Act of 1782, ch. 23, authorizes the barring of an estate tail. If the donee in tail can bar it by deed, why should not the remainder man be able to prove incapacity?

In England, where there has been a conveyance by tenant in tail of the estate, by deed of bargain and sale, the remainder man, on the death of the tenant in tail, could enter, and there was no necessity to allow him to impeach the deed of the donee in tail. In this State, it is necessary that he should have the power, as the deed, if good, defeats the estate of the remainder man.

It has been contended, that the deed of Thomas Key was only voidable, and that insanity could only be established by a writ, *delunatico inquirendo*. A commission of lunacy is not conclusive. *Shelford on Lunacy*, 2nd *Law Lib.*, 41. *Stock*, in 25*th Law Lib.*, 17, 20. This authority, too, is adverse to Lord Coke's doctrine. It says, the privy in estate may impeach the deed by ejectment. *Shelford on Lunacy*, 258. 3rd *Day's Rep.*, 90. *Shelford on Lunacy*, 256, 257.

Feoffments are voidable, but deeds are void. 3 *Mod.*, 301. 2 *Salk.*, 427, same case.

Formerly a party could not plead lunacy to a bond, but in later cases he may give it in evidence, under the plea of *non est factum*. *Stock*, in 25*th Law Lib.*, 19. 2 *Bl'k Com.*, 295.

The will of a lunatic may be questioned in ejectment. 56*th Law Lib.*, 25.

The testimony the same in regard to a deed as a will. *Stock*, *25th Law Lib.*, 28.

7 *Gill*, 29. Witnesses may testify as to facts, and their opinions based on facts in regard to insanity.

*Causin* for appellee.

The case of *Beverly*, in 4 *Coke*, 124, has not been overruled in any case in England or the United States. A feoffment *or deed*, by an insane man, is voidable, and only privies in blood can take advantage of it. See also *Shelford*, 263. *Law Lib. Shelford*, 251, 252.

After the death of lunatic, lunacy cannot be found even for the king. *Shelf.*, 22.

Stock refers to no cases to sustain his doctrine.

In *Thompson and Leach*, it is assumed, that infants and idiots stand on the same footing as to a void instrument. It is not said that a stranger can take advantage of a voidable instrument. 4 *Coke*, 225, *Whittingham's case*. Privies in blood, but not privies in estate, may take advantage of a deed by infant.

*5th Bac. Abr.*, (the new edition,) *p.* 27, sustains Beverly's case.

3 *Cruises Dig.*, 288, *sec.* 20. Infants and idiots are similar: and 13 *Mass.*, 279. Deed of infants voidable, and only himself or his heirs can impeach it. 2 *Cow.*, 568. *J. J. Marshall*, 245. 6 *John.*, 265. *Jacob's Law Dict.*, *Infancy.* 6 *Mass.*, 78. 1 *N. Hamp.*, 73. 3 *Bur.*, 1804. 10 *G. & J.*, 448. 2 *Dana*, 454. 1 *Tyler*, 247.

Deeds of infants and lunatics only voidable. 2 *Kent's Com.*, 236. 10 *Peters*, 71. 6 *Paige*, 638. 17 *Wend.*, 131. 6 *John.*, 265.

Evidence is not sufficient. 4 *Cow.*, 217. See 7 *G. & J.*, 28. 3 *G.*, 198.

The testimony must relate to the time of the deed.

Opinions, when based on facts, are admissible, otherwise not. 7 *G.*, 29.

1st commission. It is objected to, because interrogatories not filed, so as to give twenty days' notice to the opposite

party. 2 *H. & J.*, 455. 3 *H. & McH.*, 591. 4 *Gill*, 318. 1 *G.*, 119. There is no return to commission, no oath by commissioner.

*Brent* for appellant.

As there is nothing to show when the interrogatories were filed, it is to be presumed that they were filed in time. See *Cox and Calvert*, 1 *G.*, 116. Confidence reposed in commissioner.

As to evidence of insanity: See *2nd Greenlf.*, sec. 371. It is no objection, that the time to which the testimony applies is not shown. Other evidence to prove the time may be given. At the time of the objection, the sufficiency of the evidence not in question.

Court rejected the whole testimony;—of course, that in regard to his fits, his not transacting business.

In *Budd and Brooke*, some good and some bad testimony. It is no error, in such a case, to refuse an application to reject all.

Idiots and infants are different. Idiots cannot stultify themselves; an infant may avoid his own deed.

Deeds and feoffments differ, the latter are voidable, deeds are void *ab initio* as to third persons. Ejectment is the mode of setting aside deeds. *Story on Contracts*, 23.

In *5th Bac. Abr.*, 26, 27, the difference is shown between feoffment and deed. 3 *Cruise Dig.*, 288, (*top page* 20,) that Beverly's case has never been applied to a deed.

5 *Rawle*, 112. That deed is void and privy in estate may avoid it. Whatever may be said in Beverly's case, as to fines, common recoveries, it is not so as to deeds.

If a lunatic suffer a common recovery in person, it cannot be avoided, if by power of attorney it is voidable.

*Causin* in reply to the new authorities.

What is relied on in 23rd sec. of *Story on Contracts*, is said with reference to bonds, which are in prejudice of infants and lunatics.

MASON, J., delivered the opinion of the court.

This was an action of ejectment, in which the appellant (the plaintiff below,) claimed title to the land in controversy, through James Key, the elder, who, by his will, disposed of the same, as follows:  "To my said beloved wife, during her natural life; remainder to my son Thomas Key, and the heirs of his body; remainder to my son James Key, and the heirs of his body; remainder to my two daughters," &c.   The defendants then offered in evidence, a deed executed by the said Thomas Key, on the ninth day of November 1799, duly executed and recorded, by which the lands in controversy were conveyed to certain Robert Ferguson and John Campbell, for the purpose, we presume, of docking the estate tail.   The defendant proposed to follow up this evidence, with a regularly deduced title, from the last named persons down to himself, who is now in possession.   At this point in the case, the appellants offered to impeach the said deed from Thomas Key to Ferguson and Campbell, by oral proof, on the ground that from mental incapacity, the grantor Key was incapable of making a valid deed.   To the admissibility of the evidence on this point, the defendant objected.

The questions to be determined by the court, are presented by the following extract from the bill of exceptions taken in this case, viz:  "The plaintiff offered to impeach the said deed of Thomas Key, by the testimony of Mrs. Reeves, and of Elisha Robey, that they were acquainted with the said Thomas many years ago, prior to his removal to Georgia;  by Mrs. Reeves, that she had heard him converse with persons, and answer questions asked by them, but never conversed with him herself, but he was subject to fits, frequently, every change and full of the moon; by said Robey, that in his (Robey's) opinion, from his imbecility of mind, he was incapable of transacting the most ordinary business, and never did transact any to the knowledge of either of the said witnesses; and that in the opinion of both of them, the said Thomas Key was *non compos mentis*, and incapable of making a valid deed or contract; the said Robey stating that he had never seen the said

Key more than three or four times; never conversed with him himself, or heard others converse with him. The defendant objected to this testimony, and prayed the court to reject it upon the grounds:

1st. "That it was not competent for the plaintiff, under the pleadings and evidence in this case, thus to impeach the deed collaterally, they not deriving title from the said Thomas Key,

2nd. "That the evidence, if admissible, is not legally sufficient to prove the incapacity. And the court rejected all said testimony, and refused to permit the same, or any part thereof, to go to the jury."

It does not appear to us, that the court below acted upon the second proposition, submitted to them in the foregoing exception, which related to the legal sufficiency of the evidence to establish incapacity, as has been contended by the plaintiff's counsel in argument. But whether the court did or did not act upon this question, are points we do not feel ourselves called upon to settle, in the view we take of the case. Nor do we consider it necessary for us to decide upon the legal character or applicability of this evidence, in reference to the question of mental capacity. A preliminary and more important question, meets us in this stage of the case, the disposition of which will render unnecessary the decision of any other of the intricate and difficult points, which have been raised and so ably argued by the counsel upon both sides. The true and only question which we feel called upon to decide is, whether the appellants can assail, in a collateral way, in these proceedings, the deed under which the defendant claims title, upon the ground of mental incapacity in the grantor, to execute a valid deed.

If Thomas Key, the first tenant in tail, had died without issue, and had not attempted, by the conveyance to Ferguson and Campbell, to dock the entail, it is clear that the estate would have passed to James Key, the second tenant in tail, and lessor of the plaintiff in this action. The only impediment, therefore, which the plaintiff meets with, to obstruct

his way towards the successful establishment of his title, is the deed from Thomas Key. It was to the validity of that deed, that the evidence was offered.

In this stage of the case two questions are presented:— 1st. Is there such a privity existing between the plaintiff and the grantor in this deed, as will warrant the former in taking advantage of the insanity of the latter? And if so, 2nd. Can he take that advantage, and show the insanity in such a proceeding as the one now under consideration? The settlement of the second proposition, we think, will render any consideration of the first unnecessary. Are we to treat this deed as *absolutely void*, or merely *voidable*? If *void*, it is conceded, that those persons who are obstructed by it from the enjoyment of any right, can call it in question, and vacate it in any proceeding where its validity may be asserted; while, on the other hand, if merely *voidable*, it would seem that it can only be vacated by a proceeding instituted expressly for that purpose. But upon this point, we do not propose to commit ourselves. In England, it appears to be well settled, as it is in this country, where the common law has not been abrogated by statutory enactments, that the feoffment of a lunatic or idiot in person, is only voidable, and not void. The reason assigned for this is, that the solemnity and formalities attendant upon livery of seisin, together with the necessary participation of others in the act, and its notoriety, presupposes that the incapacity of the party was not apparent. For authority for these principles, reference is made to 2 *Rolle's Abr.*, 2, (E.) pl. 3. *Thompson vs. Leach*, *Carth.*, 435. 2 *Salk.*, 427. *Shelford on Lunacy*, 255.

In this State, it has been adjudged by the Court of Appeals, in 10 *G. & J.*, 433, *Matthews vs. Ward's lessee*, that livery of seisin has been abolished, and that enrolment is equivalent to it, and has been substituted in its place. Indeed, the act of 1766 provides for recording deeds of feoffment as well as other deeds; and the act of 1715 declares, that livery shall not be necessary where a deed is enrolled. The propriety of this decision, and the results to which it leads, no one can

controvert. If the acquiescence of those whose presence and participation, which are necessary to constitute a good livery of seisin, are sufficient to rescue the act of the lunatic from the presumption of being totally void, much more ought the attestation of the magistrates who took the acknowledgment, and the clerk's certificate of enrolment, which accompanies the deed of bargain and sale, of the present day, have a similar effect. From this doctrine it would seem to follow as a necessary consequence, that in this State, the deed of bargain and sale, of a lunatic, where it has been executed with all the usual formalities required by law, and duly enrolled, would, in any case like a feoffment in person, be only voidable, and not void. But the court do not wish to be understood as carrying this doctrine any further than the facts in this case warrant, nor do they design to express any opinion upon the character or effect of any other deed or contract of lunatics.

The first case to which the court have been referred on this point, is the case in 4 *Coke,* 124, known as Beverly's case. The plaintiff's counsel has objected to the doctrines announced in this case, upon the ground that they were not embraced in the decision of the court, but were the mere *dicta* of Lord Coke, and have not been sustained by subsequent adjudications in England. The profession every where have regarded every common law principle announced by Lord Coke, in whatever capacity, as entitled to the highest respect. In Beverly's case, he lays down these doctrines in regard to persons *non compos mentis,* that privies in blood, as an heir, may show the disability of the ancestor, and privies in representation, the infirmity of the testator or intestate; but that neither a privy in estate, as a gift in tail, nor a privy in tenure shall do it; and he puts this case by way of illustration: "If donee in tail, being *non compos mentis,* makes a feoffment in fee, and dies without issue, he, in reversion or remainder, shall not enter or take advantage of the insanity of the donee." The inevitable tendency of this doctrine, whatever may have been the design of the learned jurist who announced it, is to discourage and defeat entailed estates, by giving even to the

acts of lunatics, where they may attempt to destroy such an estate, a weight and influence which, under the circumstances, they would not be entitled to. The policy of this State, growing out of our peculiar institutions and form of government, has always been to discourage this species of estates, and more fully to effectuate this purpose, the act of 1782, ch. 23, was passed. By that act it is declared, that "all grants, bargains, sales and conveyances of any person or persons seized in tail, shall be good and available, to all intents and purposes, against all and every person and persons whom the grantor, bargainor or vendor might or could debar, by any mode of *common recovery*, or any ways or means whatsoever."

We do not mean, under this act, to give to an ordinary deed of bargain and sale, by whomsoever, or under whatever circumstances made, the same effect as a common recovery would have to dock an estate tail. If we did, it would have the effect entirely to shut the door to all inquiry as to the circumstances under which all deeds designed for the purpose of docking the estate tail were made, as well as all inquiry into the mental capacity of the grantor in such deeds, for the reason that a *common recovery suffered in person*, is conclusive of the mental capacity of him who suffers it, and cannot be inquired into, "for it is a matter of record, which shall not be avoided by a bare averment of *non compos mentis*, for the inconvenience which may thence ensue," as Lord Coke remarks in Beverly's case. The act of Assembly can mean nothing more, than that if the party, when he makes the deed for the purpose of docking the estate tail, is in such a condition of mental capacity as would have enabled him to suffer a common recovery, or levy a fine at common law, or, in other words, to make a valid deed; that then the deed would be conclusive upon him and all the world. The distinction is based upon the presumption, which cannot arise in reference to a deed, that he never would be permitted by the judge or court to suffer the common recovery, or levy a fine, if he were *non compos mentis*. We do not deem it necessary, for the purposes of this case, to pursue this inquiry any further; we

6      v.1

merely alluded to it with the view of excluding the idea of any design of giving to the act of 1782, any wider meaning than its language would warrant, and of rebutting the presumption, that a deed of a lunatic, as a donee in tail, under all circumstances, was equal in effect to a *common recovery.* If such were true, it would exclude, as has been already remarked, all inquiry of every kind, into the question of mental capacity. To such a length we do not intend to go. Nor do we wish to be understood as carrying the doctrine of Lord Coke, as announced in Beverly's case, to any such length as would exclude the presumption, that the remainder man could in *no case* inquire into the insanity of the donee in tail. We do not design to make any other application of the principles in that case, than to the case now before us, which is an action of ejectment in a court of common law, governed exclusively by common law principles. What could or could not be done in a court of equity, are questions which it would not be proper for us to pass upon at present.

Innumerable authorities have been cited, and great research and learning displayed by the counsel, in support of the conflicting propositions involved in this case. While it is to be admitted, that there is some conflict of authority in regard to the question we have been discussing, both in England and in this country, yet we think the general current of decisions in both countries seems to favour the reasonableness and policy of a liberal extension of the rule, which would treat the deeds and contracts of infants and persons *non compos mentis,* as merely voidable, and not absolutely void. In addition to the authorities already cited, the case of *Zouch vs. Parsons,* 3 *Burrows,* 1794, fully sustains the doctrine, and is a leading case upon the subject. Kent, in his *Commentaries,* 2 vol., 193, says: "The doctrine of *Zouch vs. Parsons,* has been recognized as law in this country, and is not now to be shaken." The same principle is adopted in 13 *Mass.,* 238, *Oliver vs. Houdlet,* 14 *John.,* 124, *Jackson vs. Burchin.* In the case of *Jackson vs. Gumner,* 2 *Cowen,* 553, the whole doctrine is very fully discussed, and the principle there

established, after a full review of all the authorities on the subject, is: "That the deed of a lunatic before office found, is not void, but voidable only; and, therefore, one who is not in privity with the lunatic cannot object to his insanity." The case of *Wait vs. Maxwell*, 5 *Pick.* 217, is to the same effect. See also *Tucker, et al., vs. Moreland*, 10 *Peters*, 58, 1 *J. J. Marshall*, 236; and a number of other authorities might be cited to the same point.

Many of the authorities which have been cited, have related to infants, and not especially and directly to lunatics; but it is the well established doctrine of law, as evinced by nearly all the decisions in England and America, upon this subject, to treat the acts of lunatics and infants as analagous, and a parallel is supposed to exist between them. We have treated them for the purposes of this case, as identical in all their legal effects.

The court will dispose of this case, by making the single additional remark, that they do not wish to be understood by any thing they have said, as advancing the doctrine that *every act* of a lunatic or infant is only voidable, and not absolutely void. There are cases, which we might readily, suppose where the converse would be true. But upon no grounds of reason and justice, could we regard the case now before us, as an absolutely void act. The deed here sought to be assailed as void, is nearly fifty years old; the party who claims under it, is an innocent purchaser, with a number of deeds and conveyances, intervening between the deed under which he got possession and the one which is alleged to be defective, and with no charge or intimation that he had any knowledge of the alleged defects in his title, or that the act of Thomas Key, here assailed, was prejudicial in any way to his (Key's) interests.

These are circumstances that strongly incline this court to give every possible effect to the evidence, which the defendant offers in support of his title, and to sanction no efforts which may lead summarily to defeat the possession which he has so long held.

What we have already said in our opinion, renders any disposition of the questions respecting the form, execution and return, of the several commissions in the record, unnecessary, and we therefore order the judgment in this case to be affirmed.

*Judgment affirmed.*