## James A. Stewart, Adm'r of Sarah Seward, *vs.* James Redditt.

Declarations of a grantor in a deed made after its execution, to the effect, that she had not executed it, that she knew nothing of it, and if she had, that she wanted witness to get the property conveyed back again, are no part of the *res gesta*, and are inadmissible to invalidate the deed.

It is well established, that the declarations of a party to an instrument of writing, made subsequent to its execution, cannot be given in evidence to invalidate it upon any ground.

These declarations were also inadmissible for the purpose of proving insanity, because they may as well have been the fruits of a well conceived deceit as of a vacant mind.

The mere naked, unsupported opinion of a witness relative to the sanity of a party is not admissible, yet in connection with the facts upon which it is

formed, his opinion is evidence, provided those facts are of such a nature as will enable him to form *a knowledge* of the party's intellect.

The facts that witness, when he was a small boy, knew the party, lived near her, had seen her at church, and that she did not eat with the family where she lived, nor speak to witness or the family, and in some other respects was peculiar in her deportment, do not form a sufficient foundation to authorise the admission of his opinion as to the party's sanity.

An opinion under such circumstances cannot be treated *as knowledge*, but must be viewed as the mere naked, unsupported opinion of the witness.

Delivery is essential to the legal validity of a deed, but no precise form of delivery need be resorted to; it may be either actual or verbal, and it is sufficient if there be an intention or assent of the mind on the part of the grantor to treat the deed as his.

The acknowledgment and recording of a deed are sufficient to warrant the presumption of a legal delivery, whether the law requires these formalities or not to make the deed valid.

The clerk, after he has recorded the deed, must return it to the grantee, who is the proper party to receive it, and hence the possession of the clerk, under such circumstances, will be regarded as the possession of the grantee.

Possession of a deed by a party who claims under the grantee, is evidence of delivery to such grantee, until the contrary be shown.

An agreement that a deed " was signed by the grantor by making her mark, and by the grantee in his own proper handwriting," is an unqualified admission that it was duly executed.

A consideration in a conveyance that the grantee should support the grantor during her life, though it is in the shape of a covenant to be executed by the grantee *in futuro*, is a valuable consideration, sufficient to pass the title.

In most cases, if not in all, the seal of the party affixed to his signature imports of itself a consideration in law.

A breach of the covenant to support the grantor would not avoid the deed; the proper remedy in such a case would be by an action on the covenant itself.

A deed conveying the mother of the negroes in dispute to a party under whom the defendant claims, though not of itself sufficient to establish title to such negroes in the defendant, is a necessary *link* in the chain of evidence to perfect the same, and therefore legally admissible to the jury.

A prayer, " that if the jury believe that at the time of the execution of the deed, *or before*, the grantor was incapable, from mental inability, to execute a valid deed or contract," then the deed is void, is vicious, because it applies the principle, "*semel furibundus semper furibundus præsumitur*," to every species of insanity, without exception.

It is an error to suppose that this maxim is unqualified in its character or of universal application; some species of insanity are not presumed to be continuing in their nature.

Where the deed itself declares that the property *was delivered*, this, if not conclusive upon the grantor and sufficient to estop him from denying the fact, throws upon him the burden of proof to establish the contrary fact of non-delivery.

APPEAL from Dorchester county court.

This was an action of *trover*, instituted on the 22nd of October 1850, by the appellant, as administrator of Sarah Seward, against the appellee, to recover the value of a negro slave, "Minty," and her two children.

The declaration contained two counts. The first charged, that Sarah Seward, in her lifetime, was possessed of the said negroes; that after her death, they came to the possession of defendant by finding; that the plaintiff was appointed her administrator in 1850, and that defendant knowing them to have been her property, and as such belonging to her administrator, converted them to his own use, &c. The second count differs only in charging the possession to have been in the administrator as such, and the conversion against him, with knowledge of his rights of property.

The defendant pleaded:—1st, *non cul.*; 2nd, *actio non accrevit, infra tres annos;* and 3rd, *non cul., infra tres annos.* The replication joined issue upon the first plea, traversed the second and third, and for further replication thereto averred, that the plaintiff's intestate was *non compos mentis* at the time of the accrual of the causes of action and commission of the grievances complained of, and so continued until her death, and that there was no administration on her estate until letters were granted to the plaintiff, and that he instituted the suit within three years thereafter. The rejoinder took issue upon these traverses, and traversed so much of the further replication as alleged incapacity, upon which traverse issue was taken by the surrejoinder of the plaintiff.

*1st Exception.* It was admitted that there was no administration on the estate of Sarah Seward until 1850. The plaintiff then proved by Charles Seward, a competent witness, that Sarah Seward died about the year 1835, and after stating various facts and giving his opinion, founded thereon, that she

was incompetent to dispose of her property, the witness stated her declarations, quoted in the opinion of this court. The defendant objected to these declarations as not competent evidence, and the plaintiff insisted that they were admissible to show her incompetency, and her liability to be imposed upon and influenced improperly. The court (GOLDSBOROUGH, A. J.,) sustained the objection, and the plaintiff excepted.

*2nd Exception.* Other witnesses were then examined by the plaintiff, and after stating sufficient facts, gave their opinion as to the incompetency of said Sarah. William H. Spedden was then called, who testified that he knew Sarah Seward; was raised about a mile from her; had seen her at church, when he was a small boy, often; once saw her by the church when she was not well clothed; she lived at Marshall's five or six years before her death; never knew her to hire out her servants or take any account of them; witness was once at dinner at Marshall's and saw Sarah Seward there,—she continued sitting in a chair, the rest of the family came to the table, but she did not; witness had seen her, and she him often enough to know him, but she never spoke to him; she did not talk with the family. Witness was then asked from what he had seen and known of her, his opinion of her competency to make contracts? This question was objected to by defendant, on the ground that the witness had not stated facts and circumstances enough to warrant the expression of his opinion, and particularly that he had never had any conversation with her and had never seen her work, which objection the court sustained and plaintiff excepted.

*3rd Exception.* After further testimony on the part of the plaintiff, the defendant offered in evidence the following instrument of writing:

"Know all men by these presents, that I, Sarah Seward, of Dorchester county, State of Maryland, for the consideration hereafter mentioned, to be made and done by Elijah Marshall of Dorchester county and State aforesaid, and his heirs, executors, administrators or assigns, I hereby granted, and sold and delivered, and by these presents do grant, bargain, sell

and deliver unto the said Elijah Marshall, all my personal property, consisting of one negro man Charles, one negro woman Phillis, and her two children Charles and Flora, and all that she may have for life, and one bed, and all and singular my personal property named or not named, unto the said Elijah Marshall, and his heirs and assigns forever, against me and my heirs or assigns forever, for which I will warrant and forever defend to the said Elijah Marshall, to him and his heirs or assigns forever, against me my heirs, executors, administrators or assigns, and against all and every person or persons claiming or to claim, upon the consideration or penalty, that Elijah Marshall shall maintain me all my lifetime in this world with sufficient food and raiment, and take care of me all the remainder of my days in this world, and when I decease or depart this life to have me decently buried; the said Elijah Marshall, for himself, his heirs, executors, administrators or assigns, hath agreed to and with the said Sarah Seward, to find her sufficient food and clothing, and keep and take care of her as long as she shall live in this world, for and in consideration of all the personal property heretofore mentioned, that she hath bargained, sold and delivered, by these presents doth grant, bargain, sell and deliver unto the said Elijah Marshall and his heirs forever; and the said Elijah Marshall doth bind his heirs, executors, administrators and assigns, to find the said Sarah Seward, in case he should depart this life first, to find her just the same as though he was living, as long as she should live according to the true intent and meaning hereof, and the acts of Assembly in such cases made and provided. In witness whereof we have hereunto set our hands and seals this 10th day of July 1830.

Test,—*John Smith.*    SARAH ⋈ SEWARD, ( Seal.)
her mark.
ELIJAH MARSHALL, ( Seal.)"

This deed was acknowledged and recorded in due form. The defendant also offered an agreement of counsel, that this deed might be used in the case, "for what it is legally worth as an instrument of writing signed by Sarah Seward, by

making her mark, and by Elijah Marshall in his own proper handwriting;" and that the witness, John Smith, attached his name thereto in his own handwriting, and was at the time a justice of the peace, and took the acknowledgment of said Sarah to the deed; but that she was competent to execute such a paper, was not admitted by this agreement.

The plaintiff then objected to the admissibility of this instrument, because:—1st, there was no sufficient proof of its execution; 2nd, no proof of delivery of the property in pursuance of the instrument; 3rd, no proof of the delivery of the instrument itself; 4th, it is merely an agreement and gives no title to the property *in specie;* 5th, it is a mere executory contract; 6th, it has no sufficient consideration and is therefore *nudum pactum;* and 7th, there is no description in the instrument which includes the property in controversy. These objections the court overruled, and permitted the paper to go to the jury as evidence, and plaintiff excepted.

*4th Exception.* Defendant admitted that the negroes claimed were in his possession. He then called various witnesses, who after laying a sufficient foundation, gave their opinion that Sarah Seward was of sound mind. He also offered evidence tending to show that the negroes in controversy were the descendants of Phillis mentioned in the said deed. The plaintiff then asked the court to instruct the jury, that said deed is not evidence of title to the property mentioned therein, because:—1st, there is no proof of its delivery by the grantor to the grantee; 2nd, no evidence that it was legally and sufficiently executed; 3rd, it is but a contract and does not transfer to the grantee the legal title to the property mentioned therein; 4th, it is *nudum pactum,* and 5th, it is but an executory contract, and there is no sufficient and legal consideration for the same; which instruction was refused, and the plaintiff excepted.

*5th Exception.* Was taken by the plaintiff to the refusal of the court, to grant the instruction quoted in the opinion of this court, in reference to the capacity of Sarah Seward at *or before* the execution of this instrument.

*6th Exception.* Was taken by the plaintiff to the refusal of

the court, to grant an instruction to the effect, that unless the jury believe from the evidence, that the grantee performed his part of the stipulation mentioned in said deed, then no title vested in him thereunder.

*7th Exception.* Was taken to the rejection of the instruction quoted in the opinion of this court, that this deed is not evidence of title to the negroes in question, unless they are mentioned therein, or are descendants of Phillis born since its execution.

*8th Exception.* The plaintiff then asked the court to instruct the jury, that the said deed is not evidence of title to the property mentioned therein, unless they are satisfied there was a delivery of said property by the grantor to the grantee, which the court refused to grant as submitted, but instructed the jury in the language of the prayer, with the further direction, that there is evidence of a delivery of the property, on the face of the instrument, but not conclusive evidence. The plaintiff excepted, and the verdict and judgment being against him he appealed to this court.

The signature and seal of the judge was affixed only at the end of the last exception. The exceptions were simply noted, and ·the prayer that the court would sign and seal them, is found only at the close of all the exceptions, and is in the usual form, "that the court would sign and seal this bill of exceptions, according to the form of the statute in such case made and provided." The counsel for the appellee contended, that this signing and sealing applied only to the 8th and last exception, and that the others, not being signed and sealed, were not before this court for consideration, and cited on this point, the cases of *Milburn vs. State*, 1 *Md. Rep.*, 13, and *Davis vs. Wilson*, 2 *H. & J.*, 345.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Elias Griswald* for the appellant argued.

1st. The evidence of Charles Seward in the 1st bill of

v.3

exceptions, ought to have been admitted. In an action of *trover* brought by an administrator, where a bill of sale or contract of the intestate is set up in bar of the recovery, and the competency of the party to make a valid deed or contract is in issue, evidence of the intestate's declarations in regard to such bill of sale or contract, is competent to show the want of capacity, and liability to be imposed upon and improperly influenced. 1 *Greenleaf on Ev.*, secs. 97, 284, 287, 288. 6 *East.*, 188. They were part of the *res gesta*. The old rule that a party will not be permitted to stultify himself is now exploded. *Story on Sales*, sec. 13. *Story on Contracts*, sec. 39. These declarations are not hearsay. 1 *Greenleaf on Ev.*, sec. 181. The first thing done upon an inquisition of lunacy, is to show the incapacity of the individual by evidence of his declarations. This evidence was material, to show what her declarations made to her own brother were, especially in the divided opinions of the witnesses.

2nd. *Spedden's* opinion of the capacity of the intestate was admissible. The preponderance of testimony was all important to the case. If his opinion is ruled out, it will be impossible ever to get the opinions of any but experts. In many phases of insanity the distinguishing characteristic is, that the party never converses. He had spoken of facts sufficient to warrant an opinion, and it ought to have been admitted. 7 *Gill*, 10. See also 2 *Iredell*, 78, 81, and 12 *Ohio*, 483.

3rd. This deed is a bill of sale of chattels, not required by law to be recorded, there must therefore be proof of its execution and delivery, in order to give it validity to pass title. 11 *Alabama Rep.*, 966. There is no proof of the delivery of the property. Ordinarily possession is evidence of delivery, but not always, as in cases between husband and wife. The ordinary presumptions do not apply here, for the grantor resided at the house of the grantee. Again, there is no evidence of the delivery of the instrument—enrolment is not evidence of delivery, because that was unnecessary. 1 *H. & J.*, 167. 1 *Md. Rep.*, 519.

4th. This deed contains words of grant and conveyance *in presenti*, upon a consideration to be performed *in futuro*. It is, therefore, but an executory grant; the title passes upon conditions, and performance of these conditions must be shown by the grantee. *Story on Sales, sec.* 232. *Pothier on Obligations*, 218.

5th. It was for the jury and not for the court to decide whether there was or was not evidence of delivery of the property, in pursuance of this deed. 6 *H. & J.*, 231. The court usurped the province of the jury, in deciding that there was evidence of delivery upon the face of the instrument.

6th. Plaintiff's prayer as to the competency of the grantor ought to have been granted. 2 *Greenleaf on Ev., sec.* 370. 1 *Pet. C. C. Rep.*, 163. The fact of incompetency being once shown, the burden of proof was on the grantee, to show a return to reason and an affirmance of the contract.

7th. The negro "Minty" is not named in the deed; and when a party undertakes to describe property consisting of negroes, and then adds a sweeping clause, conveying all his property, it is a question for the jury to decide, whether a negro not named passes by the deed or not.

*Samuel D. Lecompte* for the appellee.

1st. Spedden's testimony was properly ruled out, because his knowledge of facts was too slight to form the basis of an opinion, and whether he could give an opinion or not was clearly a question for the court. 7 *Gill*, 10. 2 *Iredell*, 83. 7 *Searg. and Rawle*, 92. 3 *Mass.*, 330. The facts deposed to by Spedden had nothing to do with the question of the sanity of the party; and without detailing such facts he could not give his opinion. 1 *Haggard*, 384, 359. 1 *Md. Rep.*, 38.

2nd. The declarations of Sarah Seward proposed to be proved by Charles Seward, were made after the execution of the deed; were no part of the *res gesta*, and were clearly inadmissible as evidence to show an unsound mind—they were also inadmissible as not tending to sustain the issue, and as being too light and trivial to go to the jury. They are, too,

as well calculated to prove deceit on the part of the grantor in the deed, as insanity.

3rd. The deed was properly admitted to the jury. The agreement of counsel is conclusive upon the question of its execution. Possession is evidence of its delivery; so also was its recording. How is it to be tested whether it was a paper proper to be recorded or not? We find it was recorded, and the prayer of the plaintiff assumes that it was a paper proper to be recorded. But suppose it was not, neither the grantor nor her representatives can impeach it. The consideration is sufficient, good and valuable. 1 *Greenleaf on Ev.*, *sec.* 483. It is an executed, and not an executory contract conveying the property *in presenti.* 3 *Burrows*, 1804. 2 *Black. Com.*, 291.

4th. The second prayer of the plaintiff was properly rejected, because it assumes that the grantor never could have become of sound mind, if at the time of the execution of the contract she was insane. But again, this prayer was rightfully rejected, because this was a voidable and not a void contract, and it cannot therefore be attacked by this proceeding. 1 *Md. Rep.*, 32. *Key's Lessee vs. Davis.* The contracts of persons *non compos* are now put upon the same footing as those of infants. 2 *Greenleaf on Ev.*, *sec.* 369. 1 *Md. Rep.*, 32. The effect of granting the prayer would have been to avoid the deed by a collateral proceeding, and not by one instituted expressly for the purpose. The same authority of 1 *Md. Rep.*, 32, is conclusive as to the correctness of the court's refusal to grant the plaintiff's third prayer. The fourth prayer was also properly rejected, because it treats as naught the words of the deed "and all she may have for life," as well as "all and singular her personal property."

*Griswold*, in reply. The case of *Key's Lessee vs. Davis*, does not go the length of saying that a voidable deed cannot be attacked, except by a proceeding instituted expressly for that purpose. The court say expressly in that case, that upon this point they do not mean to commit themselves.

MASON, J., delivered the opinion of this court.

We do not deem it necessary to express any opinion in regard to the effect which the case of *Key vs. Davis*, 1 *Maryland Rep.*, 32, should have upon the case now before us. Assuming that the present proceeding is not inconsistent with the principles annunciated in that case, still there are other questions presented in this record, which will enable us to settle the present controversy, independently of the principles involved in the case of *Key vs. Davis*.

Although the questions which we are called upon to decide were presented in numerous and various shapes in the court below, yet, upon an attentive examination of the record, we find, in fact, but three distinct, substantive, propositions, submitted for our adjudication. The first relates to so much of the testimony of Charles Seward, as seeks to disclose to the jury the declarations of the decedent in regard to the execution by her, of the bill of sale in controversy ; the second is the admissibility of Wm. H. Spedden's testimony, in so far as he attempts to give *his opinion* of the mental capacity of the deceased to make a valid contract; and third, the character and effect of the bill of sale, and its sufficiency to pass a legal title to the property in dispute.

The history of this case is briefly this : On the 10th day of July, 1830, Sarah Seward, who is alleged was *non compos mentis*, executed a bill of sale to Elijah Marshall, her brother-in-law, for certain slaves therein named, upon the consideration that the said Marshall would maintain and support her through life, which was acknowledged and recorded. Sarah Seward died about the year 1835, and in 1850, the plantiff took out letters of administration upon her estate, by virtue of which he instituted suit against the defendant to recover the value of the slaves in controversy.

Although the fact does not appear, yet it seems to be conceded that the defendant in the present action, is to be treated as holding the same title to the property in dispute, which Marshall held by virtue of the conveyance from Sarah Seward.

In the course of the trial, the questions before enumerated arose out of the evidence offered.

The evidence which was first excluded, and which forms the basis of the first exception, was that of Charles Seward, in reference to the declarations of Sarah. Those statements are as follows: "She came to my house once after the time it was said that she had made a writing, giving her negroes to Mr. Marshall. I asked her about it; she said she had not done so that she knew of, and if she had she wanted me to get them back." These declarations it will be observed, were made after the execution of the deed, and were, therefore, no part of the *res gestæ*. The purpose of the plaintiff, (who represents the grantor) in introducing this testimony was to vacate the deed, and it would seem to be a violation of a well established legal principle, to allow the declarations of a party to an instrument of writing, made subsequent to its execution, to be given in evidence to invalidate it upon any ground. But the evidence, it is said, was offered to establish insanity. Apart from the principle that a party shall not stultify himself, it will be readily seen that so far from necessarily tending to prove insanity, these declarations may as well have been the fruits of a well conceived deceit, as of a vacant mind. *Hurn's Lessee vs. Soper*, 6 *Har. and Johns.*, 276.

The objection to the testimony, we think, was well taken.

The next objection was made to receiving the *opinion* of W. H. Spedden, in regard to the competency of Sarah Seward to make a valid deed. The law on this subject has been fully and well defined by our Court of Appeals, in the case of *Brooke vs. Townshend*, 7 *Gill*, 10, and it but remains for us to apply the principles of that case to the one now before us. The principles to be gathered from that case, so far as they are applicable to the present, are these: that the mere naked, unsupported opinion of the witness, relative to the sanity of the party, is not admissible; yet his opinion, in connection with the facts upon which it is formed, is evidence, provided those facts are of such a nature as will enable him to form *a knowledge* of the party's intellect which is brought in question.

From the facts deposed to by Spedden, viz., (that he knew Sarah Seward; that he lived near her; has seen her at church and at Marshall's; that she did not eat with the family, and did not speak to the witness nor with the family, and, in some other respects, was peculiar in her deportment) no legitimate conclusions can be drawn as to the state of her mind, especially when we are told by the witness himself, that he was but *a small boy* when these circumstances occurred.

This evidence was inadmissible, inasmuch as the court can discover that no sufficient foundation was laid for the opinion of the witness, which was to constitute *the knowledge* which was to be given to the jury.

An opinion under such circumstances cannot be treated *as knowledge*, but must be viewed as "the mere unsupported opinion of the witness," and therefore, under the authority of *Brooke vs. Townshend*, cannot be received as testimony.

We can see no valid objection to the bill of sale as evidence in this cause.

It is first objected to on the ground, that its *delivery* has not been proved. Delivery, it is true, is essential to the legal validity of a deed, but it is not necessary that any precise form of delivery should be resorted to. The delivery may be either actual or verbal, and it is sufficient if there be an intention or assent of the mind, on the part of the grantor, to treat the deed as his. *Byers vs. McClanahan*, 6 *Gill and Johns.*, 250. The instrument in this case was duly acknowledged and recorded, and whether the law requires these formalities or not, to make this a valid deed, they are, nevertheless, sufficient to warrant the presumption of a legal delivery by the grantor. The clerk after he has recorded a deed must return the same to the grantee, who is the proper party to receive it, and therefore the possession of the clerk, under such circumstances, will be regarded as the possession of the grantee. Possession of the bill of sale by the defendant, is evidence of delivery to the original grantee, until the contrary is shown by the plaintiff.

The bill of sale is objected to in the second place, because

*it was not legally and sufficiently executed.* By the agreement filed in the cause it is expressly admitted, "that the instrument was signed by Sarah Seward by making her mark, and by Elijah Marshall in his own proper handwriting." This we regard as an unqualified admission that the deed was regularly signed and sealed. Indeed we are at a loss to know how else it could have been executed.

The third point raised in the appellant's prayer is, that the instrument was a mere executory contract, and not an absolute conveyance. The face of the instrument itself shows the reverse to be the fact, and if there be a question about the absoluteness of the deed, it must arise out of the circumstance, that the consideration for the conveyance, as set out on its face, assumes the shape of a covenant to be executed by the grantee *in futuro.* This is true, but it is nevertheless a valuable consideration, sufficient to pass the title. In *Hannan vs. Towers,* 3 *Har. and Johns.,* 151, Chancellor Kilty says: "A consideration may be averred and resorted to without being expressed in the deed, and any consideration, however small, will be sufficient." In most cases, if not in all, the seal of the party affixed to his signature imports of itself a consideration in law.

We are then asked to say, that unless Marshall, the grantee, "performed his part of the stipulation mentioned in the said paper-writing, that then no title vested in him" by virtue thereof. In the first place, there is no sufficient proof that he did not perform his covenants; but conceding that he did not, the effect of such an omission or breach of contract would not be to avoid the deed. If there was a breach of the covenant, the proper remedy would be an action on the covenant itself.

The court was also requested to instruct the jury, "that the bill of sale is not evidence of title to the negroes mentioned in the declaration, unless they are satisfied from the evidence that the said negroes are mentioned in said paper, or are the descendants of Phillis, mentioned therein, born since the execution of said paper."

This paper was necessary to lay the foundation of the defendant's defence, by enabling him to show that Phillis, the mother of the negroes in dispute, was his slave. Until he had done this he could not show that they were her children, and that they were born subsequent to the time when he had acquired his title to Phillis. He claimed the negroes through Phillis, and before he can successfully establish his title to them, he must show title to Phillis. While it is conceded that this paper is not sufficient of itself to establish, in this way, title in the defendant, to the negroes in dispute, yet it is equally true that it is *a link* in the chain of evidence, absolutely necessary to perfect the same, and is therefore legally admissible for the consideration of the jury. This view of the question renders any consideration of the sufficiency of the general clause in the conveyance, to pass all the property of the grantor, though not particularly enumerated, unnecessary.

It is contended, and the court are asked so to instruct the jury, "that though Sarah Seward did execute the paper writing, yet if they believe from the evidence, that at the time of its execution, *or before*, said Sarah was incapable, from mental imbecility, to execute a valid deed or contract," &c., that then they are bound to treat the deed as void, and to find for the plaintiff.

The court was right in rejecting this prayer. As has already been stated, we will not pause to inquire into the regularity of this mode of attacking the deeds of persons *non compos mentis*. Though the proceeding might be regular, yet the proposition was wrong, inasmuch as it involves the principle, without qualification, *semel furibundus, semper furibundus præsumitur*, or *once insane presumed always insane.*

In *Brooke vs. Townshend*, this subject is also fully reviewed. In regard to the maxim just quoted, the court say: "It is an error to suppose that it is unqualified in its character, or is of universal application." Some species of insanity are not presumed to be continuing in their nature, and therefore the prayer was vicious, because it applied the principle to every species of insanity, without exception.

11      v.3

The last question which is before us, arises out of the following prayer, that the paper writing is not evidence of title to the property mentioned therein, unless the jury are satisfied that there was a delivery of the property mentioned therein by the grantor to the grantee.

The deed itself declares that the property *was delivered,* and if this is not conclusive upon the grantor, and sufficient to estop him from denying the fact, it surely is enough to throw upon him the burthen of proof to establish the contrary fact of non-delivery. Any proposition, therefore, which involves the doctrine, that a party must prove a fact which the opposite party has admitted under his hand and seal, by independent testimony, is so manifestly erroneous as hardly to need denial.

While we have not decided the several questions raised and argued in this case, in the order in which they were presented, yet we think we have disposed of them all, and not being able to discover in any of them a good ground for a reversal of the judgment of the county court, we affirm the same.

*Judgment affirmed.*