# JEREMIAH TOWNSHEND and others, *vs.* SAMUEL TOWNSHEND and others.

By the laws of this State, a negro's title to freedom can only be tried by petition, filed in the circuit court, and the restrictions and privileges secured, in such cases, by the act of 1796, ch. 67, one of which is the right of *peremptory challenge,* neither party, nor no tribunal, has the power to disregard.

It matters not upon what circumstances the question of freedom depends, whether upon the sanity or insanity of the grantor in the deed of manumission, it must still be referred to the same tribunal for determination and submitted to the same course of proceeding.

A proceeding in equity to restrain the prosecution of petitions for freedom by certain negroes under certain deeds of manumission, upon the ground of the insanity of the manumittor at the time of their execution, and for issues to try the question of sanity, is irregular and void, because by it the negroes would be deprived of the right of peremptory challenge, which is their absolute right, and all of them, individually and separately, are entitled to it.

APPEAL from the Equity Side of the Circuit Court for Prince Georges County.

This is an appeal from an order of the court below, granting an injunction to restrain the appellants, who are, (except Jeremiah Townshend,) negroes, from the further prosecution of their petitions for freedom.

The bill was filed by the appellees, who, with the said Jeremiah Townshend, are the heirs at law and personal representatives of John Townshend, deceased, and states that said John having been, from the year 1794 to his death, *non compos mentis*, on the 24th of December 1831, and the 6th of February 1846, executed two pretended deeds of manumission of about *seventy negroes;* that shortly before his death, still being *non compos mentis*, he executed a writing purporting to be his last will and testament, by which he gave to his said slaves their freedom and all his real estate, consisting of about fifteen hundred acres of land, which writing was, after various proceedings, declared by the verdict of a jury, on issues sent from the orphans court of Prince Georges county to the county court thereof, and removed to the circuit court of Anne Arundel county, utterly null and void, and that therefore the said John died intestate, his death occurring in May 1846. That administration *pendente lite* on his personal estate has been granted to said Jeremiah, who has said negroes in his possession. That he owed at his death but very few debts, all which have since been paid, and that complainants and said Jeremiah are entitled to the whole of his real and personal estates. That certain of said negroes have filed petitions for

freedom against the said administrator, in the circuit court for Prince Georges county, which petitions have been since removed to the circuit court for Anne Arundel county, where they are now pending.

The bill charges, that by reason of the insane delusions of said John Townshend, especially in reference to his negroes, he was wholly incapable of executing these pretended deeds of manumission, and that they are wholly inoperative and void; but by reason of their having the forms of valid instruments, the complainants apprehend they cannot have against them, at law, a legal defence or an adequate remedy until they shall be adjudged to be void and inoperative by a decree of a court of equity, nor can the complainants enforce or demand their rights in the premises, or be able to resist these and other petitions for freedom, which they believe will, from time to time, be filed by said negroes, many of whom are minors, founded on these deeds. That by reason of the great number of negroes mentioned in these deeds and claiming their freedom thereunder, the complainants are apprehensive they will be put to enormous and ruinous costs from the multiplicity of suits, and be unjustly and greatly harrassed, and put to great charges in defending the same, which will be a direct charge upon the common property of complainants; that it is the peculiar province of a court of equity to prevent such immediate injury to parties litigant, by compelling those claiming under one and the same title to unite in one suit in equity, where the rights of all may be fairly and equitably adjudged.

The bill then prays for an injunction restraining the further prosecution of said petitions for freedom until the further order of this court, that the real estate of the said John Townshend may be divided among the parties interested, that a distribution of his personal estate, including the negroes, may be made, that Jeremiah Townshend may account for the rent of the land and the hire of the negroes, and that an issue or issues touching the sanity of the said John Townshend at the several dates of the pretended deeds of manumission may be sent to some court of law to be tried by a jury; and in the event of

37      v.5

such issues being found against his sanity, to order and direct said deeds to be cancelled and annulled, and for general relief.

The court, (CRAIN, J.,) granted the injunction, and from this order the defendants, the manumitted negroes, some having answered and others demurred, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Thos. S. Alexander* for the appellants, insisted, that the appellees were not entitled to the relief prayed, nor to the injunction as auxiliary thereto, and argued the following points:

1st. The complainants admit by their bill that the appellants, the negroes, are capable of being sued and impleaded, and are therefore precluded from denying the right of these appellants to their freedom. They cannot require these appellants to litigate with them any question which may directly or indirectly involve their right to their liberty. The law of villeinage, though not like the law of slavery in all respects, is yet like it in this, that when the master sues his slave, whether he recovers or not, he thereby constitutes him a freeman. 7 *Gill*, 211, *Patterson vs. Crookshanks. Littleton*, secs. 204 to 208. 5 *H. & J.*, 190, *Hall vs. Mullin.* 6 *G. & J.*, 136, *Burke vs. Negro Joe.* 9 *G. & J.*, 19, *Bland vs. Dowling.* 1 *G. & J.*, 390, *Miller vs. Negro Charles.*

2nd. The law of the land has prescribed one only form of proceeding by which the right of an alleged slave to his freedom can be determined, to wit, by petition, to be filed in the circuit court, on the law side thereof, by the alleged slave against the person holding him in servitude, and a court of equity has no jurisdiction to compel him to litigate his rights as a party defendant to a suit in equity, which must necessarily be complicated in its details and expensive and dilatory in its progress, upon the pretext suggested, that several claim their freedom under one instrument or under one state of facts. Each person has a right to try his own cause, independently of all others, and the law secures to him expressly the right of suing the second time in case the first proceeding shall be de-

termined against him, and the right of *peremptory challenge*. *Act of* 1796, *ch.* 67, *sec.* 24. 6 *Gill*, 302, *Cornish vs. Willson*. 2 *Md. Ch. Decisions*, 78, *Methodist Church vs. Mayor and City Council of Baltimore*. *Ibid.*, 119, *Powles vs. Dilley*. 8 *Gill*, 322, *Negro Franklin vs. Waters*.

3rd. As between freemen, competent to sue and be sued, a court of equity entertains a jurisdiction to try or provide for the trial of legal rights, on the ground of preventing a multiplicity of suits, only where the general right claimed concerns a corporeal or incorporeal hereditament, and is claimed against many persons, amongst whom there is privity, by reason of tenure or residence, and the right is derived from usage, custom or prescription, nor until the right has been established at law in one action at least, or very strong *prima facie* evidence is exhibited in support of such right. Equity never interferes in a case like the present where the right or claim concerns personalty, where its determination involves the validity of a modern deed, where there is no privity as between the several defendants, where there has been no trial of the question at law, and where the title is *prima facie* with the defendants. For the general rule on this subject, see *Mitford's Pl.*, 169, 209, and the cases there cited, especially *Hardress*, 337, *Berke vs. Harris*. The only case which gives color to the present is 3 *Price*, 164, *Kensington vs. White*, which is disapproved of by Mr. Justice Story as utterly inconsistent with principle, (*Story's Eq. Pl.*, *sec.* 537, *note* 1,) and is clearly inconsistent with the opinion of *Lord Kenyon*, 1 *East*, 220, *Birkley vs. Presgrave*, and with the rule stated by the Vice Chancellor in 2 *Simons*, 369, *Long vs. Yonge*. See also 2 *Ves.*, *Jr.*, 486, *Dilly vs. Doig*, and 1 *Jacob & Walker*, 369, *Weale vs. West Middlesex Waterworks Co.*

4th. The right of the negroes to their freedom, under the original deed of manumission, is distinct from the right of the executors, devisees and legatees under the will. They must first establish their freedom before they can call the executors to account for the personal estate, or sue the heirs at law for the real estate, and in no event can they be involved in litigation with the next of kin, *qua* next of kin. The bill is there-

*Townshend, et al., vs. Townshend, et al.*

fore multifarious in this, that the next of kin and the heirs at law unite as complainants; and in this, that they seek in such bill, to compel the negroes to litigate their rights to freedom, under the deed of manumission against the person unlawfully holding them in servitude, and their right to the realty derived under the will against the heirs at law, and to become a party to a litigation between the next of kin as caveators, and the executors of the deceased: and in this, that the bill seeks not only a determination against the right of the negroes, but also an account and distribution of the real and personal assets of the deceased. For these reasons the bill must on the hearing of the demurrer be dismissed, and as it is apparent the complainants cannot be relieved at the hearing, they are not entitled to an injunction as auxiliary to the relief which they may pretend to at such hearing. That the bill if multifarious must be dismissed in *toto.* See 2 *G. & J.*, 27, *Gibbs vs. Clagett.* 5 *Gill*, 376, *White vs. White.* That this bill is multifarious see the same cases, and *Mitford's Pl.*, 208. That an injunction is not to be granted on a bill which is void on demurrer, see 11 *Paige*, 166, *Rose vs. Rose;* 10 *Do.*, 193, *Bowers vs. Smith*, and 4 *Gill*, 472, *Geiger vs. Green.*

5th. Many of the negroes are infants under the age of twenty-one, against whom a court of equity cannot assume and never has attempted to assume jurisdiction, for the purposes claimed by the bill.

6th. The petitions depending in the circuit court for Anne Arundel county, at the time of the filing of this bill, the application, if it can be made at all, ought to have been made to the same court as a court of equity. One circuit court as a court of equity, cannot restrain proceedings at law before another circuit court. 4 *G. & J.*, 480, *Brown vs. Wallace.* 7 *Gill*, 446, *Albert and Wife, vs. Winn and Ross.*

*Alexander Randall* for the appellees, argued at length the following points.

1st. The injunction was properly granted, because the

proper mode of resisting the suits of the defendants, the ne-
groes, in their petitions for freedom, founded on these pre-
tended deeds of manumission, executed by a *non compos
mentis*, is such an application as that to a court of chancery,
for a decree declaring such deeds null and void.    1 *Md. Rep.*,
32, *Key's Lessee vs. Davis.*    As to the effect of making the
negroes under such circumstances parties to the suit, we
have a law of our own in reference to African slavery, and
we need not go back to the doctrine of villeinage which has
no relation to it.    The case of *Allein vs. Sharp*, 7 *G. & J.*,
96, is an authority upon the very point, where the court say,
"the manumitted slaves may be made parties to a suit, and if
it be shown the testator was insolvent, they may be sold for
a term of years *or for life*."    This is utterly inconsistent with
the idea, that the making of them parties makes them free.
And in the subsequent proceedings in chancery in that case, the
negroes, some of whom *were infants*, were made parties de-
fendants, and were sold under a decree of the chancery court
as slaves *for life*.    See the case reported in 4 *Md. Ch. De-
cisions*, 537, also 6 *Gill*, 328, *Cornish vs. Willson*, and 4
*Gill*, 249, *Peters, et al., vs. Van Lear*, to the same effect.

2nd.  Because the multiplicity of suits, the ruinous amount
of costs, and the other vexatious and harrassing consequen-
ces imposed upon the complainants, arising out of the various
trials at law of these petitions for freedom already filed, and
others interminably that may be filed, require that a court of
equity should interpose, especially as all the negroes claim
their freedom under the same instruments of writing, and the
same state of facts, and can have their rights in no way im-
paired thereby, and try the validity of said deeds, or else di-
rect issues to a court of law to try their validity.    6 *Johns.
Ch. Rep.*, 150, *Brinkerhoof vs. Brown.*    4 *Cow.*, 699, *Fel-
lows vs. Fellows.*    2 *Mason*, 198, *West vs. Randall.*    1 *Dan-
iels Ch. Pr.*, 76.    24 *Pick.*, 67, *Witherlee vs. Ocean Ins.
Co.*    5 *Cowen*, 282, *Jackson vs. Stiles.*    In note 1 to the
last edition of *Story's Eq. Pl.*, *sec.* 537, it is said, the case of
*Kensington vs. White*, 3 *Price*, 164, is sustained by the case of

*Mills vs. Campbell*, 2 *Younge & Collyer*, 389. There is no clear well defined rule upon the subject applicable to all cases, but each must depend upon its own peculiar circumstances. The negroes will not be deprived of the right of peremptory challenge, for in the issues sent to try the validity of the deeds, the order may direct this right to be secured to them. But every other citizen of the State is liable to have his rights adjudicated in equity, and by so doing he may be deprived of some of the privileges secured to him in a common law trial. What reason is there why these negroes should be placed upon a different or better footing? A court of law may direct the causes to be consolidated. ( 2 *Md. Rep.*, 270, *Mitchell vs. Smith.*) And then the right of challenge could be exercised but once.

3rd. Because the various matters for adjudication set forth in this bill constitute but one subject, the settlement of the estate of John Townshend deceased, and although the rights of different parties, and different rights of the same parties are involved, yet are they all properly introduced into this bill, and can be fully and fairly determined by a court of equity, with less delay and expense to the parties than in any other proceeding, and therefore the bill is not multifarious. 1 *My. & Cr.*, 603, *Campbell vs. Mackay.* 2 *Mason*, 194, *West vs. Randall.* 2 *Sch. & Lef.*, 371, *Whaley vs. Dawson.* *Story's Eq. Pl.*, sec. 271, *note* 2, 287 *note* 1, 284 *to* 286, *and* 532 *to* 539. 1 *Daniel's Ch. Pr.*, 396. 3 *How.*, 333, 411, *Oliver vs. Piatt.* 1 *Simons & Stuart*, 313, *Turner vs. Robinson.* 5 *Madd. Rep.*, 138, 145, *Salvidge, et al.*, *vs. Hyde.* *Mitford's Pl.*, 148, citing 1 *Vern.*, 29, *Purefoy vs. Purefoy* 4 *Madd. Rep.*, 171, *Wheeler vs. Malins.* 2 *G. & J.*, 14, *Gibbs vs. Clagett.*

4th. As to the objection that the bill should have been filed in the court where the petitions for freedom were depending, it is only necessary to say, that these petitions were originally filed in Prince Georges county court; the defendants reside there, and by the act of 1836, ch. 269, the issues that may be framed there for trying the validity of these deeds may be

removed to Anne Arundel county. But there is no interference of jurisdiction, for the court in Prince Georges county only decides *what evidence* shall be used in the court in Anne Arundel county, in the trials for freedom there. The heirs at law are necessary parties to the suit, because the negroes may claim their freedom, upon the ground that the will gives them real estate, and hence by implication gives them their freedom.

Mason, J., delivered the opinion of this court.

If any one of the several objections which have been urged by the appellants' counsel, to the regularity and validity of this proceeding, be tenable, it will constitute a sufficient ground for a dismissal of the bill.

The proper mode under our laws, by which to try the title of a negro to his freedom, is by petition filed in the circuit court. This right is to be asserted subject to certain restrictions and privileges, which neither party, nor no tribunal has the power to disregard. By the act of 1796, ch. 67, one of those privileges secured to both parties, consists in the right of *peremptory challenge.* It is clear therefore, that any tribunal that would attempt to adjudicate upon the rights of an alleged slave, (except under some other specific proceeding pointed out by statute,) in a manner which would deprive him of this right of challenge, would act in violation of law, and its proceedings be therefore irregular and invalid. Such we regard the proceeding in this instance. The title of the negroes to their freedom is the question to be determined in this controversy, and yet this is proposed to be decided, in a manner which precludes the exercise of the right of challenge secured to the negro.

The suggestion, that issues might be framed and sent from the court of chancery to a court of law, for trial before a jury, where the right of challenge might be exercised, will not avail, because it makes an absolute right of the party, depend, in a measure, upon the discretion or grace of the court of chancery. Nor is the case varied by the application, con-

tained in the bill for issues to try the question of the sanity of the grantor, in the several deeds of manumission in question. If this application were granted, it would only secure the right of challenge *but once,* while there are a number of negroes, whose freedom depends upon the result, all of whom, individually and separately, are entitled to this right of challenge.

This question seems to be put to rest by principles announced in the case of *Negro Franklin vs. Waters,* 8 *Gill,* 322. Judge Chambers, in delivering the opinion of the court, on page 330, says, in regard to the question of *freedom vel non,* that "in our State, the mode in which this question is to be tried, is not only prescribed by statute, but there are peculiarities in regard to it, which cannot be gratified but by an observance of the mode indicated. It must be by petition in a court particularly designated, and the right of peremptory challenge is expressly secured to both master and slave. To deny to either party the privilege secured by the statute, if the trial be by petition, would be an admitted violation of the plain meaning and express words of the law. Is it less so to permit one of the parties to deprive the other of this privilege, by using a different form of action?" See also the case of *Negro Peters and others, vs. Van Lear,* 4 *Gill,* 249.

We cannot perceive that the views we have herein expressed, *conflict with the principles announced in the case of Key vs. Davis,* 1 *Md. Rep.,* 32. The question of freedom involved in this controversy, our statute requires, shall be determined in a particular tribunal and in a particular mode of proceeding, and it matters not upon what circumstance that question depends, whether upon the sanity or insanity of the grantor in the deed of manumission, it must nevertheless be referred to the same tribunal for determination and submitted to the same course of proceeding. If any statute had pointed out how the matters in controversy in the case of *Key vs. Davis,* were to be determined, we should have had as little difficulty in disposing of that case as we have had in settling this.

We do not deem it necessary to touch the other grounds of objection urged against the validity of this proceeding.

*Decree reversed and bill dismissed with*
*costs to the appellants in both courts.*