# Negroes JERRY, *et al.*, *vs.* JEREMIAH TOWNSHEND.

It is for the party offering proof to determine the order in which he will present it.

On a petition for freedom the defendant may show that, at the date of the deed of manumission under which the petitioners claim their freedom, the grantor was of unsound mind and incapable of executing a valid deed or contract.

Where evidence is given of the insanity of the grantor, before and at the date of the deed assailed, testimony by the same witnesses showing the state of his mind subsequent to the deed, and that the insanity was continuing and permanent in its character, is admissible.

An expert cannot be asked his opinion as to the state of a party's mind *upon the evidence submitted to the jury,* for this would permit him to assume the functions of a jury and decide upon the very fact at issue.

But such a witness may be asked his opinion upon a state of facts, *hypothetically* put, based upon the evidence, and this is the proper way to submit such questions to the witness.

An expert who was present at the trial and had heard all the testimony of the witnesses on the part of the defendant in regard to the sanity of the party, was asked, "upon the hypothesis that the testimony given by the witnesses in this case is *all true,* then what would be your opinion" of the party's sanity? HELD:

That this question was *substantially* correct, as it was virtually putting a hypothetical state of the case to the witness from which his opinion is to be given.

19      v.9

Negroes Jerry, *et al.*, *vs.* Townshend.

Where, on a petition for freedom, it was proved that the grantor, prior to the execution of the deed of manumission, labored under *permanent* or *habitual insane delusions* in regard to his right of disposition of the negroes manumitted by the deed, the *onus* is on the petitioners to prove that he was free from such delusion at the date of its execution and recording, in order to authorise a verdict in their favor.

A jury will not, without consent of counsel, be permitted to take with them to their room the deposition of witnesses in the case taken under a commission.

APPEAL from the Circuit Court for Anne Arundel county.

*Petition for freedom*, by the appellants against the appellee. The case was tried upon the issue of *freedom vel non*. In the course of the trial the *defendant* took two exceptions, as follows:

*1st Exception of Defendant.* The petitioners offered in evidence a deed of manumission, executed by John Townshend, on the 24th of December 1831, and duly recorded on the 20th of March 1832, under which they claimed their freedom, and proved their identity with the negroes mentioned in that deed, and that John Townshend died in April or May 1846. This deed describes "Jerry" as forty-four years of age. The defendant then asked the court to instruct the jury, that unless they find from the evidence that, at the death of John Townshend, negro Jerry, one of the petitioners, was under forty-five years of age, they must find a verdict, as to him, for the defendant. This prayer the court, (BREWER, J.,) refused, and to this ruling the defendant excepted.

*2nd Exception of Defendant.* The defendant then proved that he took possession of these negroes immediately upon the death of John Townshend, and had had possession of them ever since; and then offered to prove that at the time of the execution of the deed of manumission, in 1831, John Townshend was insane, and therefore incompetent to execute the same. To this evidence the petitioners objected, because it was not shown or stated that defendant claimed the petitioners as executor or administrator of said John Townshend, which objection the court sustained, and the defendant excepted.

The *petitioners* then took the following exceptions in the further course of the trial.

*1st Exception.* After the testimony had been offered and the court had ruled as in the preceding exceptions, which are

to .be taken as part of this, the defendant offered to read in evidence a certificate of the grant to him of letters *pendente lite* on the estate of the said John Townshend, by the orphans court of Prince Georges county. This certificate is in the usual form, stating that letters *pendente lite* on the personal estate of John .Townshend were granted to Jeremiah Townshend, on the 25th of March 1852. The petitioners objected to the reading of this paper to the jury, but the court overruled this objection and permitted it to be read, and to this ruling the petitioners excepted.

*2nd Exception.* The defendant then offered to "prove by a competent witness, that at the date of this deed of manumission the said John Townshend was of unsound mind, and incapable of making a valid deed or contract. The petitioners objected to this evidence, but the court overruled this objection, and the petitioners excepted.

*3rd Exception.* The defendant then proved by a competent witness, who had known John Townshend from 1826 to 1831, and had frequently conversed with him during that time, and who detailed those conversations, that from his conduct, manner, conversations and general appearance, witness believed then, and still believes, he was insane and incapable of executing a valid deed or contract. In continuation of this witness's testimony, the defendant proposed to offer by the same witness other similar conversations and acts of John Townshend, subsequent to the execution of the deed in 1831, to throw light upon the state of his mind at the time of its execution. The petitioners objected to the further evidence so proposed to be given, but the court decided it was admissible, and to this ruling the petitioners excepted.

*4th Exception.* The defendant then, for the purpose of showing that Townshend, at the time of executing and recording the deed of manumission, was of unsound mind, and incapable of executing a valid deed or contract, proved by the witness mentioned in the preceding exception, and various other witnesses, some of whom had known him from the year 1815, others from subsequent dates, and others only from a few years before his death, and all of them up to the time of

his death, the same facts, substantially, which are set out in the report of the case of *Townshend vs. Townshend,* in 9 *Gill,* 506, and 6 *Md. Rep.,* 295. The defendant then, before any rebutting proof had been offered by the petitioners, produced Dr. John Fonerden, and proved by him that he had been for nine or ten years last past in charge of the Maryland Hospital for the Insane, and had attended the whole of the present trial, and had heard all the testimony offered on the part of the defendant. The defendant then proposed to ask this witness the following question: "Upon the hypothesis that the testimony given by the witnesses in this case, of the acts and declarations of John Townshend as to his personal intercourse with God, is all true, and that at the time Townshend made these declarations, as to this intercourse and its character, he believed what he declared, what would be your opinion as to the condition of his mind at the times of such declarations?" To the admissibility of this question, and the answer of the witness thereto proposed to be given, the petitioners objected, but the court overruled the objection, and permitted the question to be asked and the answer thereto to go to the jury. To this ruling the petitioners excepted.

*5th Exception.* The petitioners then, to rebut the evidence offered by the defendant, proved by Dr. Semmes, and other witnesses, the facts stated in the report of the case, above referred to, and offered in evidence various deeds executed to and by John Townshend in his lifetime. The defendant then asked the court to instruct the jury, that if they find from the evidence that prior to the execution and recording of the deed of manumission under which the petitioners claim their freedom, John Townshend labored under permanent or habitual morbid and insane delusions with regard to his right of disposition of the negroes therein named, and among whom are these petitioners, then, in order to authorise a verdict in their favor upon such deed, it is incumbent upon the petitioners to prove that he was free from such delusion at the time of executing and recording such deed. This instruction the court granted, and to this ruling the petitioners excepted.

*6th Exception.* After the cause had been argued by counsel

Negroes Jerry, *et al.*, *vs.* Townshend.

on both sides, and before the jury retired to their room, the petitioners proposed to let the jury take with them the record evidence, including the testimony of Dr. Semmes, which' had been taken under a commission, and the various deeds which had been offered in evidence by them, but the court, upon objection by the defendant, refused to permit this to be done, and to this ruling the petitioners excepted.

The verdict and judgment were in favor of the defendant, and the petitioners appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Frank H. Stockett* and *Thos. S. Alexander* for the appellants, argued :

1st. That the ruling of the court below, stated in the first exception taken by the appellants, is erroneous:—1st. Because it was not shown by the certificate, or otherwise, that the John Townshend named in the certificate is the John Townshend under whom the petitioners claimed their freedom. The burden of proving identity is on the defendant, the party who affirms, and on whom it lies as a necessary ingredient of title. 1 *Greenlf. on Ev.*, sec. 493. There is no such proof of identity in the exception or in the record. 2nd. Because it was not shown that the litigation supposed, and pending which administration was to continue, was still depending. The defendant was not administrator *pendente lite* unless the litigation was still pending, for after the litigation had ceased his office terminated. The whole duty of such an administrator is to *hold* and *take care of* the estate merely till the suit *terminates*, and he is then bound to pay over the assets to the administrator proper. *Act of* 1810, *ch.* 34, *sec.* 6. 4 *Bac. Abr.*, 69, *Title Exc'r, letter G.* 1 *Lomax on Adm'rs & Exc'rs*, 165, *sec.* 4. 1 *Haggard*, 313, *Estate of Susanna Graves.* 3 *Md. Ch. Dec.*, 295, *In the matter of Rachel Colvin.* 2 *Peere Wms.*, 576, *Walker vs. Woollaston.* 2 *Watts*, 332, *Dietrich's Appeal.* 4 *Do.*, 34, *Ellmaker's Estate.* 2 *Viner's Abr.*, 102, *Title Exc'r, letter (m,) sec.* 3. 1 *Ball & Beatty*, 192, *Gallivan*

*vs. Evans.* 3 *Humph.*, 652, *Houston vs. Houston.* 2 *G. & J.*, 79, *Winchester vs. The Union Bank.* 7 *Gill*, 81, *Gibbons' vs. Riley.* 7 *H. & J.*, 40, *State, use of Scoffield, vs. Craddock.* After the suit terminates such administrator cannot plead or defend any suit, and it was therefore the imperative duty of the defendant to show that the controversy was still pending. 3rd. Because it was not shown that these letters were granted pending a controversy *about the will,* which is the only case in which such letters can be granted in Maryland. 5 *Gill*, 256, *Tomlinson vs. McKaig.* Before the orphans court could issue such letters it must be satisfied, and the letters must show, there was a litigation *about the will,* and if the authority of the court to grant them must be patent upon the *face* of the letters, such authority, if the letters do not show it, cannot be supported by any extrinsic facts. But if there were such facts showing the pendency of the litigation, the defendant should have *offered* to follow up the production of the letters by such proof, and no such offer was made.

2nd. That the administrator *pendente lite* has no such interest in the estate of the deceased, as entitles him to impeach the solemn acts of the deceased on the ground of insanity. The act of 1810 does not give to the administrator *pendente lite* all the powers conferred upon the administrator by the act of 1798, ch. 101. He has the power to collect, to hold, but not to administer, nor to prosecute or defend in the case of a title voidable at the election of the intestate in his lifetime, or by his representative after his death. A recovery against him will not bind the estate; he stands only in the relation of a receiver. As sustaining our views on this point, we refer to 1 *Md. Rep.*, 32, *Key vs. Davis.* 4 *Coke*, 124, *Beverly's case.* *Shelford on Lunacy*, 263. 5 *Bac. Abr.*, 27. 3 *Cruise Digest*, 288. 2 *Cowen*, 568, *Jackson vs. Gumaer.* 1 *J. J. Marshall*, 245, *Breckenridge vs. Ormsby.* 6 *Johns.*, 265, *Jackson vs. Todd.* 6 *Mass.*, 78, *Baker vs. Lovett.* 1 *New Hamp.*, 73, *Roberts vs. Wiggin.* 10 *G. & J.*, 448, *Matthews vs. Ward.* 2 *Dana*, 454, *Cates vs. Woodson.* 2 *Kent's Com.*, 236. 10 *Pet.*, 71, *Tucker vs. Moreland.* 6 *Paige*, 638, *Eagle Fire Co. vs. Lent.* 17 *Wend.*, 131, *Rool vs.*

*Mix.* 7 *G. & J.*, 96, *Allein vs. Sharp.* We therefore say the ruling in the second exception was erroneous.

3rd. That the decision of the court below in the third exception was incorrect, because we insist that the evidence of such subsequent conversations are not admissible to avoid the title of the petitioners, conveyed to them under the deed of 1831. 6 *H. & J.*, 276, *Hurn's Lessee vs. Soper.* 3 *Md. Rep.*, 67, *Stewart vs. Redditt.*

4th. That the question permitted to be asked in the fourth exception was irregular and inadmissible. It was calculated and designed to give to the defendant the benefit of the opinion to be expressed by the witness, without any statement or exhibition of the facts which the witness may have supposed had been proved, and without giving to the jury, therefore, the opportunity of passing upon the reasonableness of the opinion which might be expressed. The opinion would thus be admitted to control the verdict of the jury upon the very question at issue, whilst that opinion might be founded upon a case imagined by the witness, and very different from the case arising on the facts as proved and understood by the jury. Conceding that in a case where the facts are incontrovertible the parties may, by agreement, obtain the opinion of an expert by a question of this compendious form, it is insisted that it is entirely inadmissible where the question is objected to, and especially where the facts are to be controverted, and before all the evidence in regard to the fact has been concluded. 1 *Greenlf. on Ev.*, sec. 440. 10 *Clarke & Finnelly*, 200, 212, *M'Nughten's case.* 5 *Hill*, 603, *Paige vs. Hazard.* 1 *Russell & Ryan*, 456. 12 *Moore*, 148, *Jameson vs. Drinkald.* 5 *Car. & Pay.*, 73, *Collier vs. Simpson.* 9 *Do.*, 601, *Sills vs. Brown.*

5th. That the prayer granted by the court in the fifth exception does not simply affirm, that delusion being shown to exist at one time, it may be presumed to exist at a time subsequent, nor that the burthen of proving that it has ceased to exist is cast on the party who denies that it continues, but the proposition involved is, that the defendant having shown that a delusion ever existed the verdict must be for him, unless the

petitioners prove that John Townshend was free from such delusion at the time of execution and recording of the deed. So that the prayer assumes that the delusion described in the prayer is, if it existed, of a character to vitiate the deed under which the petitioners claim their freedom. But the delusion supposed is not a delusion in regard to his right to dispose of his negroes as he has disposed of them by the deed given in evidence, nor is it put to the jury to find that the deed was executed under the influence of the supposed delusion, or that there was any connection or relation between the act done and the delusion supposed. Now it is insisted, that a delusion which is to avoid a deed, is to bear to the deed to be avoided the relation of cause to effect. It must be a delusion in relation to the act done which caused the act to be done, and in the absence of which the act would not have been committed. The prayer supposes the existence of no such relation. On the contrary, the party may have labored under a delusion such as is supposed, and at the same time the deed may have been the fruit, the exercise, of a perfect free will. In support of our views on this point, we refer to 10 *Clark & Finnelly*, 200. *Shelford on Lunacy*, 296. 2 *Eng. Eccl. Rep.*, 118, *Dew vs. Clark, et al.*

6th. That as matter of practice and matter of propriety, the jury are entitled to all documents which are given in evidence before them, and that in this case it was peculiarly proper that the jury should have the deed under which the petitioners claimed title, and those other deeds offered in evidence, since the contents of those deeds and the parties to them, and other circumstances apparent on their inspection, would have furnished strong evidence of the fact in issue in the cause. *Ev. Pr.*, 314. 1 *Arch. Queen's Bench Pr.*, 400. 2 *Tidd*, 916. 24 *Wend.*, 428, *Farmers & Manf. Bank vs. Whinfield.*

*A. B. Hagner* and *Alex. Randall* for the appellee, argued:

1st. That none of the objections urged against the ruling of the court in the first exception are valid. It may be remarked that none of them were raised in the court below, and, as we insist, cannot be raised here. The first objection relates to the

*identity* of the parties named in the certificate of the grant of letters *pendente lite.* The usual mode of proof in such cases is simply to *present the exemplification,* which proves itself. 3 *Bouv.,* 378. 1 *Greenlf. on Ev.,* sec. 519. The *onus* was upon *them* to show that there was *another* John Townshend, and until that was done there was no necessity for us to prove the identity. The exemplification is in the usual form, and the same law applies to administrators *pendente lite* as to full administrators. *Act of* 1810, *ch.* 34, *sec.* 6. 3 *Md. Ch. Dec.,* 294, *Rachel Colvin's Estate.* Might *we* not as well have contended that *they* did not prove the identity of John Townshend with *our intestate?* or might they not, with equal propriety, urge that there is no proof that the defendant was the Jeremiah Townshend named in the certificate? But if further proof of identity were required, it had actually been furnished in the first and second exceptions taken by the defendant, which, by express language, are made parts of the appellants' first exception. In these exceptions the identity is fully proved. The truth of the facts contained in a bill of exceptions can never afterwards be disputed in the same cause. 1 *Gill,* 80, *Mitchell vs. Mitchell.* As to the second objection, relating to the *pendency of the litigation,* we say that the record *proves itself,* and our case stopped when we had presented it. The *onus* of repelling this was upon *them* by showing that the *contest had terminated.* Until this was done we were not compelled to do more than produce the exemplification of the letters. The presumption of law is, that the contest is still in progress, it having been proved once to *have existed.* 1 *Greenlf. on Ev.,* secs. 41, 42. 2 *Do.,* 344. 3 *Starkie on Ev.,* 1252. 4 *Md. Rep.,* 172, *Hammond vs. Inloes.* The third objection, as to the pendency of the contest *about the will,* is also answered by the production of the exemplification of the letters, showing that the defendant had been appointed such administrator and had duly bonded as such, which *is* all that we were required to prove. 4 *Md. Rep.,* 448, *Wilson vs. Ireland.* But we further insist, that it was wholly unnecessary to prove any of these facts, for the *issue* on a petition for freedom is *freedom vel non* as against the *whole world,* and

any party therefore may question the petitioner's right to free-
dom, no matter in what relation he may stand to the manu-
mittor.   9 *G. & J.*, 180, *Negro Harriet vs. Ridgely*.   *Ibid.*,
211, *Cross vs. Black*.   They *selected* the defendant, and can-
not recover, simply because they have sued a man with *no
title*, for if this were so a negro could *always* recover his
freedom by suing *a stranger*.   But suppose it was incumbent
upon us to prove all these facts, which it is urged we have not
proved, how are we to *begin* to prove them?   We must begin
*somewhere*.   The order of proof was with us, and surely the
certificate was evidence to *begin with;* it was one step in the
proof and admissible as such, and the objection, therefore,
(which is the only one in this exception,) that it was not
admissible *as evidence*, cannot be sustained.   6 *Md. Rep.*,
464, *Plank Road Co. vs. Bruce*.   This is a conclusive answer
to all the objections urged against the ruling of the court in
the first exception.

2nd.   That the ruling of the court in the second exception
was correct, because if John Townshend, the grantor in the
deed of manumission, was, at its date, of unsound mind, and
incapable of making a valid deed or contract, this deed was
void and could not confer freedom upon the petitioners, and
the *defendant* could avail himself of this objection.   The
administrator *pendente lite* has, pending the controversy, the
self same rights of an executor or an ordinary administrator,
except to sell the property.   *Acts of* 1810, *ch.* 34, *sec.* 6;
1798, *ch.* 101, *sub-ch.* 5, *sec.* 4.   3 *Md. Ch. Dec.*, 294.   7
*Md. Rep.*, 282, *Cain vs. Warford*.   *Stock on Non Compos*,
31.   The full administrator has clearly the right to attack the
deed of his intestate on the ground of insanity.   5 *Md. Rep.*,
446, *Stewart vs. Spedden*.   5 *Do.*, 296, *Townshend vs.
Townshend*.   This should certainly be allowed to an admin-
istrator in a case of petition for freedom, for, 1st, it is for the
benefit of the estate.   Suppose the executor an infant; cannot
the administrator *durante minoritate* defend the action where
the testator is insane?   2nd.   There cannot be the same strict-
ness in such cases as in other deeds.   Manumission is allowed
only by *express law,* and it seems to have been intended that

all defences should be made by representatives, for the act of 1796, ch. 67, sec. 13, only permits such deeds to be executed by "any person *capable of making a valid deed*," &c.

3rd. That the evidence proposed to be offered in the third exception was admissible, because, after the defendant had offered evidence, by the acts and conversations of the manumittor, to prove that he was of unsound mind and incapable of making a valid deed or contract at the date of the deed, it was competent to offer evidence of his other similar conversations and acts subsequent to its execution, to throw light upon the state of his mind at the time of its execution. 2 *Greenlf. on Ev.*, secs. 369, 371. 5 *G. & J.*, 300, *Davis vs. Calvert.* 7 *Gill*, 19, *Brooke vs. Townshend;* and the same case in 9 *Gill*, 510, where such subsequent declarations and acts were introduced. 5 *Md. Rep.*, 440, *Stewart vs. Spedden. Stock on Non Compos*, 49. 1 *Bland*, 370, *Owings' case.* Subsequent acts *must* be admitted in evidence, or otherwise it would often be impossible to prove insanity. The execution of the deed may be the first act of insanity. In *Stewart vs. Reddit*, 3 *Md. Rep.*, 67, the declarations applied only to the *deed*, and for that reason were held inadmissible. They were not *general acts* of insanity, as in this case, and no previous insanity had been proved.

4th. That it was competent for the defendant, after he had offered the testimony of the acts and conversations of the manumittor, before, at, and after the execution of the deed, to examine an expert who had been present during the trial, and had heard all the testimony as to the condition of the manumittor's mind at these times, and that the interrogatory proposed was a proper one. 1 *Greenlf. on Ev.*, sec. 440. 7 *Gill*, 27, *Brooke vs. Townshend.* But it is objected, 1st, that no *hypothetical* case is put. How can this make any difference? Suppose we had written down *all* the testimony given and had asked his opinion on this, is there a doubt that his answer could have been given. But the authorities are direct on this point. *Shelford on Lunacy*, 68. *Ray's Medical Jurisprudence on Insanity*, 502, 510. 3 *Greenlf. on Ev.*, sec. 5. 7 *Metcalf*, 505, *Commonwealth vs. Rogers.* 47 *Eng.*

*C. L. Rep.*, 312, *Fenwick vs. Bell.* The case cited from 10 *Clarke & Finnelly*, 200, differs in many important particulars from this. See also 1 *Arch. Queen's Bench Pr.*, 378. 2nd. It is said but *part* of the testimony was submitted to the witness. But to this we reply, a party can segregate any portion of the testimony and make it the basis of a prayer. 1 *Gill*, 127, *Whiteford vs. Burckmeyer & Adams.*

5th. That *permanent* or *habitual insane delusions* in the mind of the manumittor, with regard to the disposition of these negroes, being found by the jury, any manumission of them, when under these delusions, would be void, and it was incumbent on the petitioners, who could only claim under a deed executed in a lucid interval, to prove that there was such a lucid interval at the time of its execution. 7 *Gill*, 30. 2 *Greenlf. on Ev.*, sec. 371. 1 *Do.*, sec. 42. *Stock on Non Compos*, 49. 2 *Bouv.*, 434. The delusion referred to in this exception does not relate altogether to *the deed.* The deed was the offspring *directly* of the delusion, the consequence of the delusion, and so the court said in 7 *Gill*, 32, 33. *Ray*, 244, 245. The physicians now question the existence *at all* of a lucid interval. *Ray*, 333, *et seq.* Of course, therefore, this increases the burthen. But we say it was a delusion in reference to the *whole subject* of the disposition of his negroes in *every way, including this mode.* We have not *particularised* any *special* sort of disposition other than by deed. But we speak *generally* of *all* manner of disposition, by deed, will, sale, or otherwise. The *facts* proved show that the deed was the direct result of the cause, viz., the *delusion.*

6th. That the petitioners had no right to give to the jury their record evidence, to be taken to the room of the jury, especially after objection made thereto by the defendant. The jury had no such right without consent of counsel. *Ev. Pr.*, 314. 3 *Bouv.*, 494. 1 *Ld. Ray.*, 148, *Rex vs. Burdett.* 3 *Thos. Coke*, 541. 3 *Chitty's Gen. Pr.*, 916. 24 *Wend.*, 428, *Farmers Bank vs. Whinfield.* 5 *Johns.*, 112, *Thayer vs. Van Vleet*, note (a.) 1 *Siderfin*, 235, *Goodman vs. Cotherington.* 5 *Binney*, 240, *Alexander vs. Jameson.* 1 *Arch. Queen's Bench Pr.*, 400. *Graham on New Trials*, 80. But

this ruling is not a cause of exception if wrong. 5 *Sandford,* 221, *Howland vs. The Sheriff of Queens County.* 13 *How.,* 363, *Day vs. Woodworth.*

MASON, J., delivered the following opinion, affirming the judgment:

In the case of a petition for freedom, the issue being *freedom vel non,* and not title to the negro, any party who may be in the possession of the negro, and who may be the party defendant to the suit, may offer any legal evidence to defeat the negro's petition. It matters not, therefore, whether the defendant in this proceeding had been duly appointed administrator *pendente lite* or not, he was in the possession of the petitioners, and it was therefore competent for him to defeat, if he could, by any legal evidence, their claim to freedom. The incompetency of the grantor, from mental unsoundness, to execute a valid deed of manumission, is surely a sufficient ground to defeat such deed, and as we have said in the case of *Townshend vs. Townshend,* 5 *Md. Rep.,* 287, that the question of freedom *vel non,* in whatever aspect it may be presented, must, by our statutes, be determined upon a petition for freedom, it follows, necessarily, that every matter which may be sufficient to defeat the petitioner's claim, whether it be in the nature of an equitable or legal defence, can be given in evidence under a petition for freedom.

A petition for freedom is a proceeding under our statutes, and not one at common law, and therefore the principles announced in *Key vs. Davis,* 1 *Md. Rep.,* 32, do not apply to such a proceeding.

From what has been said the ruling of the court upon the appellants' first exception was a matter of no importance, and the question, however determined, could not have changed the result. We therefore decline to reverse upon this exception. *Clarke vs. State, use of Darnall,* 8 *G. & J.,* 111.

It also follows that there can be no objection to the ruling of the court upon the appellants' second exception, and we affirm it. The defendant simply proposed to show by *competent witnesses,* that at the date of the aforesaid deed the said

Townshend was of unsound mind, &c. This we have said it was competent for the defendant to do upon this proceeding.

While we are not prepared to say that in all cases evidence is admissible which tends to show unsoundness of mind subsequent to the period at which the insanity is alleged to exist, yet there are many instances where such evidence would be admissible, and this would depend very much upon the character of the insanity in question. In the case before us it will be observed, that the witness whose testimony is objected to, as disclosed in the third exception, had given evidence to which no objection had or could be taken, namely, evidence of the state of Townshend's mind previous to, and at the time of the execution of the deed. The record then proceeds to say, "in continuance of this witness's testimony the defendants proposed to offer, *by the same witness*, evidence of other similar conversations and acts of John Townshend subsequent to the execution of the deed of 1831, to throw light upon the state of his mind at the time of the execution of said deed." This evidence, we think, was properly received, because it tended to show the nature and character of the insanity under which the party was supposed to labor. It was not the testimony of an isolated witness, which related alone to independent facts subsequent to the period involved in the issue. In such a case it might have been a question how far the acts and sayings of a party at one period, were evidence of the state of his mind at a period long anterior. But in the present case the testimony came from a witness who had known the party before, at the time of, and after the execution of the deed which is assailed, and the effect of this testimony was to show the state of his mind during the several periods to which it related, and that the insanity was continuing and permanent in its nature.

The question involved in the fourth exception, relating to the interrogatory propounded to Dr. Fonerden, is not free from difficulty upon the authorities. Upon an examination of the cases it will be found, that there is considerable conflict among them. It is clear that you cannot ask a witness, an expert, his opinion, as to the state of a party's mind, upon

the evidence submitted to the jury. To do so would be to transfer the functions of the jury to the witness, and would permit him to decide upon the very fact at issue, and thus to control the verdict of the jury. It is equally clear, on the other hand, that you may ask such a witness his opinion upon a state of facts, hypothetically put, based upon the evidence, and this is in fact the proper way to submit such questions to a witness. In the case now before us, it is true, this rule was not strictly observed, yet we think it was substantially. The question propounded to the witness was not his opinion upon the evidence submitted. By such a question it would be left to the witness to determine what testimony he would believe and what he would reject, and the degree of weight to be attached to each item of testimony submitted. But the question was, " upon the hypothesis that the testimony given by the witnesses in this case, &c., *is all true*," then, what would be the witness's opinion ?

By this interrogatory, as thus put, the witness is not permitted to weigh the testimony, but is required to assume it *all* to be true as stated. It is virtually, as we have said, putting an hypothetical state of case to the witness from which his opinion is to be given.

While we would have preferred that the question should have been propounded strictly in the usual form, we still do not discover such error in the terms in which it was actually put, as to justify a reversal of the judgment.

We can discover no error in the fifth exception, which relates to the prayer granted by the court. We think the legal propositions therein contained are substantially correct.

Whatever may be said about the propriety of allowing *the deeds* in this case to be taken by the jury to their room, it is clear that the depositions of the witness was properly withheld, and as the application to the court was to allow *all the written evidence,* including the depositions, to be taken by the jury, it was not error in the court to deny the application as thus made. *Alexander vs. Jameson, 5 Binney,* 238.

*Judgment affirmed.*

LE GRAND, C. J., and ECCLESTON, J., delivered the following separate opinion :

We concur in the affirmance of the judgment, and with our brother MASON in the affirmance of the ruling of the court below, as stated in the first exception, but not for the reason given by him. We think the letters were some proof in the case, and it was for the defendant to determine the order in which he would present his evidence. *Plank Road Co. vs. Bruce,* 6 *Md. Rep.*, 464.