DAVID EVANS *vs.* ELIZABETH HORAN and ELIZA
PRESTON.

*When a Land Record Book may be removed from the County
of its origin to be used as Evidence in the Court of another
County—Certificate of Acknowledgment of a Deed—Voidable
deed—How a Deed of Bargain and Sale, where the Grantor
was non compos at the time of its Execution, may be avoided.*

As a general rule Land Record Books cannot be removed from the
county of their origin, to be used as evidence in the Courts of other
counties, but in one peculiar case they may be used in order to pre-
vent wrong and injustice.

Thus where the question of the execution *vel non* of a deed by a
marksman, is legitimately raised, and the original is lost or not
produced by him who claims under it, and the certified copy which
he offers shows the mark was duly made, the other side may rebut
this by the production of the Record Book itself.

The certificate of acknowledgment is not conclusive of the fact that
a deed was actually signed and sealed by the grantor; the execu-
tion of a deed consists of acts of the party making the deed and
who is affected by it.

A deed of bargain and sale of real estate for a valuable consideration,
duly acknowledged and recorded, is voidable only, and not abso-
lutely void, by reason of the fact that the grantor was *non compos
mentis* at the time it was executed.

Such a deed may be avoided by the heirs-at-law of the grantor; but
they cannot do this at law in an action of ejectment, where posses-
sion under it has been held for a long period, and permanent im-
provements have been made upon the land by a *bona fide* possessor;
they must assail it by a direct proceeding in equity, where the
equities of the parties can be properly adjusted.

APPEAL from the Circuit Court for Garrett County.

This was an action of ejectment brought by the appel-
lees against the appellant and Sarah Evans, his wife.

Pending the case, Sarah Evans died ; her death was suggested, and her name as a defendant was stricken out.

*First* and *Second Exceptions.*—Sufficiently set out in the opinion of the Court.

*Third Exception.*—The plaintiffs offered the following prayers :

1. If the jury shall believe from the evidence, that William Barnes died, seized and possessed of the land mentioned in the plaintiffs' declaration, and by his last will and testament devised the same to his daughter, Ruth Metz, for life, and at her death, to her son, John Metz ; and that the said John died intestate, and without issue ; and that the said John Metz did not, during his life-time, sign and make the deed of conveyance offered in evidence in this case ; or if they do believe that he did sign, execute and acknowledge said deed, but at the time of so doing, had not sufficient mental capacity to make a valid deed or contract, and that the said Ruth Metz departed this life in the year 1863, and that the plaintiffs in this cause are the sisters of said John Metz, then the plaintiffs are entitled to recover in this suit to the extent of their interest or estate therein, at the time of the bringing of this suit.

2. That the defendant cannot make title to the land mentioned in the plaintiffs' declaration, by possession thereof, if they find that the land was devised by William Barnes to Ruth Metz for life, and at her death to John Metz, and that said Ruth died in 1863.

3. That unless the jury shall believe from the evidence that John Metz signed the paper-writing offered in evidence by the defendant, purporting to be the deed from Isaac Metz, Ruth Metz and John Metz, to one James Morrison, Junior, dated the 4th day of December, 1821, offered in evidence, that then the said paper-writing is not the deed of John Metz, and passed no title out of the said John Metz to James Morrison, Junior, and that neither

the defendant nor any one else can claim title to the land mentioned in the said writing, by virtue of the said writing.

4. That if the jury shall believe from the evidence that John Metz did sign, seal and acknowledge, with Isaac and Ruth Metz, the paper-writing offered in evidence by the defendant, purporting to be a deed of conveyance of the land mentioned in the plaintiffs' declaration, to one James Morrison, Junior; and if they shall further believe from the evidence that the said John Metz, at the time of the signing, sealing and acknowledging the said writing, was of weak and unsound mind, and by reason of his weakness and unsoundness of mind, was incompetent to make a valid deed of conveyance of his land or any interest therein, that then the said paper-writing conveyed no title from said John Metz, and that the said defendant, nor any one else, can claim any title to the land mentioned in the plaintiffs' declaration, under and by virtue of said deed or paper-writing.

And the defendant offered the three following prayers:

1. If the jury believe that John Metz was not insane, not idiotic, but was a man only of weak mind, and of sufficient capacity to make a valid contract, then, before they can find against the deed offered in evidence (purporting to be executed by him) upon that ground, they must further find that such weakness of mind was taken advantage of by the party or parties who procured said deed from him.

2. That under the evidence in this cause, the plaintiff cannot recover to a greater extent than two-eighths and two-sevenths of one-eighth.

3. That the copy of the alleged deed from John Metz, and others, to James Morrison, Jr., offered in evidence, is *prima facie* evidence of the execution of said deed, and the burden of proof is on the plaintiffs to show that it was not executed by said Metz, and also to show the mental incompetency of said Metz to execute the same.

.The Court, (PEARRE, J.,) granted the plaintiffs' prayers, and the defendant's second and third prayers as offered, and modified the defendant's first prayer by inserting the word "only" after the word "man," and the words " and of sufficient capacity to make a valid contract," after the words " weak mind." The defendant excepted.

The jury found a verdict for the plaintiffs to the extent of two-eighths, and two-sevenths of one-eighth of the land claimed in the declaration, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY, and IRVING, J.

*William Brace*, for the appellant.

*James E. Ellegood*, for the appellees.

MILLER, J., delivered the opinion of the Court.

This is an action of ejectment involving the title to two tracts of land in Garrett County, containing about eighty four acres. It was admitted that the title to these tracts was, in 1803, vested in William Barnes by a deed from the patentee, and that Barnes by his will devised the same to his daughter Ruth Metz for life, with remainder in fee to her son John Metz. The life tenant, Ruth Metz, died in 1863, and John Metz died in 1857 or 1858, unmarried and without issue, leaving eight brothers and sisters, his heirs-at-law, and the plaintiffs are two of his sisters. Upon this proof the plaintiffs rested their case. The defendant then offered in evidence a duly certified copy of a deed purporting to have been executed by Ruth Metz and her husband, Isaac Metz, and by her son, the said John Metz, bearing date December 4th, 1821. By this deed the land in question was conveyed to James Morrison in consideration of the sum of $400, and the

defendant claimed title by *mesne* conveyances from Morrison. The plaintiffs then called a deputy clerk of the Circuit Court for Allegany County, who had been summoned to bring with him the Land Record Book of that county containing the record of this deed of 1821, and proposed to have the book identified by the witness, and to offer in evidence to the jury the original record of this deed, in order to show (as they claimed said record would show,) that the copy of the deed offered in evidence by the defendant was not a *true copy*, in that, as plaintiffs claimed, the original record contained *no mark* to the name of John Metz, though the same contained the words "his mark," for the purpose of showing that the same was never executed by John Metz. The defendant objected to this record being offered in evidence, but the Court overruled the objection and allowed the record to be offered to the jury. To this ruling the defendant excepted, and this is the first question presented for review.

The objection mainly urged against the correctness of this ruling is, that the Land Record Book produced and offered in evidence, constituted part of the original records of another county. The argument is, that in no case can such records be removed from the county of their origin, and the custody of the proper officials there, for the purpose of being used as evidence in the Courts of other counties. It is said the law (Code, Art. 37, sec. 58,) has provided, that exemplified copies of such records shall be evidence, and reference is made to the cases of *Jones vs. Jones*, 45 *Md.*, 154, and *Goldsmith vs. Kilbourn*, 46 *Md.*, 292, where it was held, that original papers in a cause ought not to be taken from the files of another Court, and produced as evidence instead of copies or exemplifications, as provided for by the Code, and that such original papers can only be used in the Court to which they belong. The propriety of this general rule cannot be questioned, and it applies as well to Land Record Books, as to judg-

ments, decrees or other judicial proceedings. No description of records are more important than those of conveyances of real estate, and in none are the public more deeply interested. A rule or principle of evidence therefore which looks to the preservation of such records, and promotes their security and safety by preventing their removal from place to place, at the instance and for the use of litigants in other counties, should be carefully observed and firmly upheld by the Courts. But while this is so, circumstances may occur when use must be made of the original records in order to prevent wrong and injustice. Such in our opinion are the circumstances of this case, and the Court below, therefore, properly allowed a departure from the general rule. The execution by John Metz of the deed of 1821, was a vital point to the defendant's case. The original document which would have thrown light upon this question was not produced, and the trial took place nearly fifty-eight years after the date of that instrument. There was no proof that it was in existence or had been preserved by any one. It could not be presumed to have ever been in the possession of the plaintiffs. On the contrary, if presumption is to be indulged in, in the absence of all proof on the subject, that presumption would place it in the hands of the defendant, for he claimed under it, and it was a muniment of his title. In support of his title the defendant produced, as he had the right to do, an exemplified copy of this deed. That copy indicated, that John Metz had executed the original instrument by making his mark in the proper place. But the plaintiffs insisted that the record from which this copy was taken contained no such indication, and nothing purporting to be such a mark, and therefore, the copy offered in evidence by the defendant was not in fact a true copy of that record. That it was permissible for the plaintiffs to show, that the deed was never in fact executed by their brother cannot be a matter of dispute.

The law is imperative that "every deed conveying real estate shall be signed and sealed by the grantor." Code, Art. 24, sec. 10. The certificate of acknowledgment is not *conclusive* of the fact of such signing or execution. The execution of a deed consists of *acts* of the party making the deed, and who is affected by it. *Carrico vs. Farmers' and Merchants' National Bank*, 33 *Md.*, 245. When this signing or execution is to be made by a party who cannot write or sign his name, the usual mode of procedure is well understood. He makes his mark in the space left for that purpose either with the pen in his own hand, or by holding or touching it when made by another by his direction and assent. The mark so made appears on the original instrument, and is recorded with and as an essential part of it, just as is the signature of one who has written his name in full, and the absence of the appropriate mark on the Record Book is certainly some evidence at least, that the original was never executed as the law requires. Strength would be added to such evidence if, as in the present case where the deed purports to have been executed in the same manner by three parties, the marks of one or two should appear on the record, and none of the third. We hold, therefore, that when the question of the execution *vel non* of a deed by a marksman is legitimately raised, and the original instrument is lost, or not produced by him who claims under it, and where the exemplified copy which he offers, shows that the mark was duly made, it is competent for the other side to rebut this by the production of the Record Book itself. The very necessity of the case creates an exception to the general rule. It is hardly possible to conceive of any other circumstances in which an exemplified copy of a deed would not serve all the purposes of the original record as well as all the ends of justice, and that instances of this character are most rare and exceptional is manifest from the fact, that during the long time

Evans *vs.* Horan and Preston.

that has elapsed since the passage of our Registry laws, this is the first and only case in our judicial annals wherein such a difficulty has arisen, or such a question been presented. We have, therefore, no fear that in affirming, as we do, this ruling of the Circuit Court, we shall introduce an exception to the salutary general rule, which will inconvenience the public or endanger the preservation and safety of the Land Records of the State.

There being no error in the admission of this testimony, it follows that the Court was right in giving instructions to the effect that the defendant could not claim title under the deed of 1821, unless the jury found from the evidence that that deed was signed or executed by John Metz. These instructions at the instance of the plaintiffs, in connection with that part of the defendant's third prayer, (which was also granted,) to the effect that the exemplified copy of the deed offered in evidence by the defendant, is *prima facie* evidence of its execution, and casts the burden of proof on the plaintiffs to show that it was not executed by John Metz, correctly stated the law upon this branch of the case. As Ruth Metz, the life tenant of the land, did not die until 1863, less than twenty years prior to the commencement of this action, the Court was clearly right in granting the plaintiffs' second prayer, to the effect that upon that state of facts the defendant could not make title to the land by possession.

The plaintiffs also assailed the deed of 1821, upon an entirely different ground. They offered evidence tending to show that at the time this deed was executed, John Metz was *non compos mentis*, and incapable from mental infirmity of making a valid deed or contract. The defendant objected to the introduction of this testimony, but the Court overruled the objection and allowed the testimony to go to the jury. This ruling in connection with the instructions granted by the Court upon the same subject, presents the second main question in the case.

39                    v. 52.

In considering this question it becomes necessary to determine whether the deed, assuming the party to have been *non compos* at the time, was for that reason absolutely void or merely voidable, for if it was void, it is clear that those who are obstructed by it from the enjoyment of any right can call it in question, and vacate it in any proceeding where its validity may be asserted. *Key vs. Davis,* 1 *Md.,* 39. The exact question which the record presents is this : is a deed of bargain and sale of real estate made upon a valuable consideration, duly acknowledged and duly enrolled or recorded under our Registry Acts, void or merely voidable by reason of the fact that at the time it was executed, the grantor was *non compos mentis?* Without advancing or at all sanctioning the broad doctrine that *every act* of a lunatic or infant is voidable and not void, we are of opinion that the deed in question does not belong to that class which the law deems absolutely void. This we think has been established as the law of this State, whatever may be the conflict of authority elsewhere. We refer to the cases of *Key vs. Davis,* 1 *Md.,* 32, and *Chew vs. Bank of Baltimore,* 14 *Md.,* 299, and the reasoning and authorities cited and relied on by the Court in those decisions. The cases of *Wait vs. Maxwell,* 5 *Pick.,* 217 ; *Jackson vs. Gumaer,* 2 *Cowen,* 552, and *Breckenridge vs. Ormsby,* 1 *J. J. Marshall,* 236, are directly in point. Many other more recent decisions of the State Courts to the same effect might be cited, but it is unnecessary, inasmuch as we consider the decisions of our predecessors as having settled the law of Maryland upon this subject. A few brief quotations from the opinion in *Key vs. Davis,* will show the grounds upon which the doctrine is rested, and how cautiously it is guarded and limited. "In England," say the Court, " it appears to be well settled, as it is in this country, where the common law has not been abrogated by statutory enactments, that the *feoffment* of a lunatic or idiot, in person, is only voidable and not

void. The reason assigned for this is, that the solemnity and formalities of livery of seizin, together with the necessary participation of others in the act, and its notoriety, presupposes that the incapacity of the party was not apparent." For this, reference is made, among other authorities, to the case of *Thompson vs. Leach, Carth.,* 435. The Court then adds: "In this State it has been adjudged by the Court of Appeals, in *Matthews vs. Ward's Lessee,* 10 *G. & J.,* 433, that livery of seizin has been abolished, and that enrollment is equivalent to it, and has been substituted in its place. Indeed the Act of 1776 provides for recording deeds of feoffment, as well as other deeds, and the Act of 1715, declares that livery of seizin shall not be necessary where a deed is enrolled. The propriety of this decision, and the results to which it leads no one can controvert. If the acquiescence of those whose presence and participation, which are necessary to constitute a good livery of seizin, are sufficient to rescue the act of the lunatic from the presumption of being totally void, much more ought the attestation of the magistrates who took the acknowledgment, and the clerk's certificate of enrollment which accompanies the deed of bargain and sale of the present day, have a similar effect. From this doctrine it would seem to follow as a necessary consequence, that in this State the deed of bargain and sale of a lunatic, where it has been executed with all the usual formalities required by law, and duly enrolled, would, in any case, like a feoffment in person, be only voidable and not void. But the Court do not wish to be understood as carrying this doctrine any further than the facts in this case warrant, nor do they design to express any opinion upon the character or effect of any other deed or contract of lunatics."

Holding then the deed to be voidable, and not void, it is clear beyond dispute that it can be avoided by the heirs-at-law of the grantor, privies in blood, and the question

now is, can they do this in a Court of law in an action of ejectment for the land mentioned in the deed? Here we are confronted with a question which has not been definitely adjudicated in this State. In *Key vs. Davis*, there was a strong intimation that the deed could only be vacated by a proceeding instituted expressly for that purpose, and that its validity could not be questioned in an action of ejectment, but the Court declined to commit itself upon that point. In *Stewart vs. Redditt*, 3 *Md.*, 67, the Court again declined to pass upon the question, whether the deed of a person *non compos mentis* could be attacked in an action at law, and decided the case upon other grounds. In petitions for freedom where the sanity of the grantor executing the deed of manumission, was involved, it was held that that question could be tried in a Court of law, and in a Court of law only; but this decision rested upon the sole ground that the *statute* had designated the particular tribunal in which alone such proceedings should be instituted and conducted, and for that reason cases of that character were held not to be in conflict with the principles announced in *Key vs. Davis. Townshend vs. Townshend*, 5 *Md.*, 287; *Negroes Jerry, et al. vs. Townshend*, 9 *Md.*, 145. It is true that in Maryland, as in other States, the sanity of a *testator* may be contested in an action of ejectment between the heirs-at-law, and the devisees of the realty, (*Colvin vs. Warford*, 14 *Md.* 553;) but such cases do not seem to be analagous to the one now before us, where possession under the deed has been held for a long period of time, and where meliorations and permanent improvements may have been made upon the land by a *bona fide* possessor. It is clear that a Court of equity will not take an estate from an innocent possessor who has made improvements thereon, having no knowledge, in fact, of any defect in his title, and supposing himself to be the absolute owner, without compelling the plaintiff to make some allowance

for such improvements. No principle of equity is better established than this. *Jones vs. Jones,* 4 *Gill,* 87; *Mc-Laughlin vs. Barnum,* 31 *Md.,* 453. Assuming that we are right in holding this deed to be voidable merely, and not void, the defendant, if he be such *bona fide* possessor, is clearly entitled to this equity. Our examination of the authorities has convinced us that in no case has this equity been denied, except in cases where the Courts have held the deed to be absolutely void, or where the proceeding to avoid it has been by the lunatic himself or his guardian. If then in the present case the plaintiffs were allowed to set up in this action the insanity of their deceased brother, the defendant would be deprived of all benefit of this equity, and lose the land without any compensation for improvements he may have made upon it. Reason and justice are therefore strongly in favor of the position that the plaintiffs should be required to assail the deed by a direct proceeding in equity to set it aside, a proceeding in which all the equities between the parties can be properly adjusted, and not to allow them to attack it on this ground in this action, and we accordingly so determine.

It follows there was error in the ruling contained in the second exception, and in the granting of the plaintiffs' first and fourth prayers, and as the judgment must be reversed for these errors it becomes unnecessary to notice the questions raised by the motion in arrest of judgment. A new trial will be awarded in order to enable the plaintiffs, if they so choose, to proceed with the action upon the ground of the non-execution of the deed by John Metz.

*Judgment reversed, and*
*new trial awarded.*